## William T. Powers and others v. Stanton A. Irish and another.

*What essential in petition for leave to dam a stream under Comp. L.,* § *356: Jurisdiction of board of supervisors.* A petition to the board of supervisors under the statute (*Comp. L.,* § *356*) for leave to dam a stream and to construct in connection therewith a shute or apron, for the passage of rafts, which contains no description whatever of the proposed shute or apron, is fatally defective. Such petition would not give the board of supervisors jurisdiction to act under the statute.

*Evidence.* The record of the proceedings of the board of supervisors upon such petition would not be admissible as evidence in an action for damages for injuring and delaying plaintiffs' rafts, by unlawfully obstructing the stream by a dam erected by virtue of such proceedings, to prove that such dam was lawfully built.

*Damages caused by public nuisance.* In such action where the stream is a public highway and the obstruction is a public nuisance, a recovery can be had only for such damage as is peculiar to the plaintiffs, and is the natural and proximate consequence of the nuisance.

*Evidence: Loss of particular market: General allegations.* Where, in such action, the declaration states, by way of inducement, that the plaintiffs were manufacturers of lumber and timber, " for market at various places on Lake Michigan

in the states of Michigan, Illinois and Wisconsin," but alleges nothing to show that the lumber in question was destined for any particular market, or that any particular market was lost to the plaintiffs, it does not connect the loss of the Chicago market or of any particular market, or the scale of prices in any such market, with the cause of the damage; and the loss of the Chicago market cannot be regarded as a necessary result of the detention or destruction of the rafts in Grand river, or, as a consequence, legally imported by the facts pleaded.    Evidence, therefore, of the decline in price of lumber at Chicago during the alleged delays to plaintiffs' rafts would not be admissible.

*Practice in supreme court: Motion to dismiss writ of error: Laches.* A motion to dismiss a writ of error for various informalities and irregularities,—one being that a necessary party was not named in the writ,—comes too late after judgment in this court.

*Judgment: Severance.* Where a judgment is severable, it may be reversed in part and affirmed in part; but where it is an entirety against several parties, whether in tort or *assumpsit,* if reversed as to one it must be as to all.

*Heard July 12.    Decided October 4.*

Error to Kent Circuit.

This action was brought by Stanton A. Irish and Henry M. Fuller, against William T. Powers, Martin L. Sweet, James M. Barnett, William Harrison, John W. Squires, Julius Berkey, William A. Berkey, John B. Moon, John Mangold, Charles C. Comstock, Reuben Wheeler, Richard E. Butterworth, George M. Huntley, John E. Earle and Justus E. Earle.

The nature of the action is sufficiently stated in the opinion.

Upon the trial the counsel for the plaintiffs, to maintain and prove the issue on their part, gave evidence, under objection, tending to show that the extra labor and expense of boring lumber and preparing the rafts mentioned in the declaration at the mill of said plaintiffs, in Greenville, Montcalm county, Michigan, in the year 1867, in order to prepare said rafts properly to pass the shute in the dam at Grand Rapids, Michigan, was the sum of fifty dollars; and that in the year 1868, the extra labor and expense of preparing the rafts mentioned in said declaration at Greenville aforesaid, to pass the shute in the dam at Grand Rapids aforesaid, was the sum of seventy-five dollars.

And the counsel for said plaintiffs, to maintain and

prove the said issue on their part, offered to prove that the price of clear stuff lumber in Chicago, Illinois, declined from forty-six dollars per thousand at the middle of April, 1867, to thirty-six dollars at the middle of June, 1867, and that common lumber declined within the same time from four to five dollars per thousand; that from the twentieth of April to the twentieth of May in the same year, clear stuff lumber declined from six to eight dollars per thousand, and within the same time common lumber declined four to five dollars per thousand; and also that during the same interval in the year 1868, clear stuff lumber declined at said city of Chicago from four to six dollars per thousand feet, and common lumber from two to three dollars per thousand feet. To the admission of the matters so offered in evidence, the said defendants, by their counsel, objected, because the same were immaterial and irrelevant, and also for the reason that such evidence was too remote, indefinite and uncertain, to constitute any basis or rule of damages in said cause. The circuit judge overruled the objection and admitted the evidence and the counsel for defendants excepted. The said plaintiffs offered no evidence whatever of the value of said lumber at the time and place of detention. The counsel for the plaintiffs here rested.

It was then admitted by said plaintiffs, that in the year 1853, Eliphalet H. Turner was the owner of the lands upon which said dam abuts on the west side of Grand river, and also of lands both above and below said dam, and that William T. Powers, one of said defendants, is now, and at the time of the erection of said dam was, the owner of the same lands by title from said Turner.

And the counsel for said defendants, to maintain and prove the said issue on their part, offered in evidence the record of the board of supervisors of the county of Kent, made June 18th, in the year 1853, which record is in the words and figures following, to wit:

"On motion, the petition of Eliphalet H. Turner for leave to construct a dam across Grand river in the city of Grand Rapids, was called up, of which the following is a copy, to wit:

"'To the Board of Supervisors of the County of Kent:

"'The petition of the undersigned, a resident of the city of Grand Rapids, represents that he is the owner of an undivided half of the land lying on the right bank of Grand river, from the bridge in the city of Grand Rapids aforesaid, for one half of a mile, and he says that he is desirous of constructing a dam across said river at the city of Grand Rapids aforesaid, abutting the same upon the abutment erected at the expense of the state near the canal guard-lock on the left bank of the river, and abutting on the right bank thereof, near the residence of Silas Hall; said dam to be for hydraulic purposes, to be made of stone and timber seven and one-half feet high. It is proposed to construct an apron or shute over said dam for the passage of rafts over the same, to be of such dimensions and of such material and description as your honorable board shall think fit and proper to answer the purpose aforesaid.

(Signed)                "'Eliphalet H. Turner.'

"The report of the committee on the foregoing petition being called up, on motion the same was adopted, to wit:

"'Your committee on dams, appointed by your board, on the petition of E. H. Turner for the privilege of constructing a dam across the Grand river, commencing at, or near, the waste or bulkhead of the canal on the east side of the river, and thence west across said river at a point on the west side of the river opposite the house of Silas Hall, the majority of the committee are in favor of granting the prayer of the petition, and that a committee of three be appointed to consist of the following members: Messrs. Wilson, Dockeray and Hooker, for the purpose of making such restrictions as are made by the laws in relation to the

powers granted to the board of supervisors by the laws of 1851, giving to the board powers for the construction of bridges and dams to certain persons or corporations under certain regulations.'"

The counsel for said defendants also offered in evidence that portion of the record of said board of supervisors, of date February 27, 1855, which is in the words and figures following, to wit:

"Mr. Bailey offered the following resolution, which was adopted:

"'*Resolved by this board,* That the prosecuting attorney be requested to examine the records kept by the clerk, and report to this board whether, in his opinion, the board of supervisors of the county of Kent have by any act or resolution of theirs, at any previous session, established any point or points, on which to abut a dam across Grand river, in the city of Grand Rapids.'

"The prosecuting attorney, John T. Holmes, Esq., being present, reported in obedience to said resolution substantially, verbally, legally and orally as follows, to wit: That he had examined into the matter and had found that the action at a previous session of the board had sufficiently designated a point at which a dam might be erected across said river, in said city; which report was supposed to be accepted, no one making any objection to the same."

They also offered in evidence that portion of the record of said board of supervisors, of date March 1, 1855, which is in the words and figures following, to wit:

"The committee on dams made the following report:

"'The committee on dams having had under their consideration the subject-matter in relation to the application of Eliphalet H. Turner, for the construction of a dam across Grand river, report that,

"'*Whereas,* It does not appear on the records that proper

notices were given of the application of Eliphalet H. Turner, for leave to construct a dam across Grand river, according to the resolution of said board, of date June 18, 1853, granting, amongst other things, the petition of said E. H. Turner, nor does it appear by said record that due notices of said application were posted, and it appearing, by the affidavits of E. H. Turner and S. W. Turner, that said application has been duly made, published and posted; therefore,

"'*Resolved*, That the clerk of said county be, and hereby is, instructed to file said affidavits, and that E. H. Turner has complied with the requirements of the statute in such case made and provided, prior to the passage of said resolution, of date June 18, 1853, as aforesaid.'

"The report of the committee was received, and, two-thirds of all the members voting in favor thereof, the same was adopted.

"A true copy, as this day passed, March 1, 1855.

[Signed]                "ORLANDO J. ODELL,
                " *Chairman Board of Supervisors.*"

The counsel for said plaintiffs objected to the introduction of said evidence, on the ground that the same was immaterial and irrelevant to the issue in said cause. The circuit judge ruled that said evidence was immaterial and irrelevant to the issue, and rejected the same; to which the said counsel for the defendants excepted.

The said defendants requested the court to charge the jury:—

1. That if the building of said dam across Grand river, without the proper authority of the board of supervisors, was an unlawful act, the want of such authority must be shown by the plaintiffs.

2. That if the building of the dam in question was not

unlawful, the plaintiffs can only recover upon showing gross negligence on the part of the defendants.

3. That the falling of the price of lumber in Chicago aforesaid, during the alleged delays to the plaintiffs' rafts, constitutes no basis of damages in this cause ; but the damages must be confined to the actual loss and expense resulting directly and naturally from the act' of the defendants.

These requests were refused; and the counsel for defendants excepted. But the court did charge said jury, that if the defendants claim as a defense in this suit, that the dam in question was constructed by them by lawful authority, it was incumbent on them to show such lawful authority, and it was not necessary on the part of the plaintiffs to show the contrary. To this charge the said defendants excepted.

The verdict was for the plaintiffs, and judgment was entered accordingly. The defendants, William T. Powers, William Harrison and John Mangold brought the cause to this court on writ of error.

*J. W. Champlin,* for plaintiffs in error.

*Norris & Blair,* for defendants in error.

GRAVES, J.

The defendants in error brought this action to recover damages alleged to have been caused to their rafts of lumber, by means of a dam of plaintiffs in error, across Grand river.

The jury returned a verdict for four thousand dollars, upon which judgment was entered. It is now urged that upon the trial the court erred in admitting and excluding certain testimony and in refusing to charge as requested. Several of the objections stated in the record are abandoned and those still insisted on are considered as presenting two points.

*First:* Whether the proceedings of the board of supervisors in relation to giving leave to Turner to dam the river were properly excluded; and, *second,* whether it was correct to admit evidence of the value of lumber at Chicago in the years 1867 and 1868.

The rejection of the proceedings of the board of supervisors was right. Without particularly considering other objections to their admission, we think the petition did not substantially comply with the requirements of the statute.—*Comp. L.,* § *356.* The law required that the petition should set forth the purpose, location, height and description of the dam, and whether it was proposed to construct a lock or shute or apron for the passage of boats, vessels, rafts or timber, and if so, the *description of such passage;* and it also required that *before any hearing on the petition, notice* of the application, signed by the petitioners, and *stating* substantially the *contents of the petition,* should be posted for three weeks in each township crossed by the stream, and published by a newspaper, if any, published in the county. This provision, as well as the nature of the subject-matter, makes it obvious that the legislature intended that the petition should be the ground-work of the proceeding, and contain the whole plan in detail, and that by means of the notice embodying the substance of the petition, all interested should be advised in advance of the hearing, of the precise nature of the project, and be in a situation to judge as to the propriety of the scheme, the nature and measure of the meditated obstruction, and as to the security promised by the plan to the interests of riparian proprietors and others. In case the petitioners should propose a way for boats, vessels, rafts or timber, it was not intended that the public should be kept in ignorance of its scope and character until after, or upon, the hearing; nor was it intended to cast upon the

supervisors the duty of prescribing the dimensions of the passage or the materials to be used in making it. The law was carefully framed to insure precise information to the public, ·in season to enable all who might choose, to oppose the application on the hearing before the board. And it neither contemplated a decision in the absence of such information, nor invested the board with power to supply deficiencies in the petition. There is room for contending that the petition was substantially defective for want of precision and detail in setting forth the required particulars about the dam. But without dwelling on this, or, indeed, deciding it, we are clearly of opinion that the omission of any description of the proposed shute or apron for rafts was a fatal defect. No one was bound to appear and contend before the board about a passage proposed by the petition, but not described in it; and the resolution of the supervisors respecting the passage could not supply a fact required by the law as a basis for their power to act.

Upon the other point we think the court erred. It is conceded that the Grand river at the place of. the obstruction was a public highway. The impediment, which caused the injury, appears upon this record to have been a public nuisance, and a recovery was allowable only for such damage as was peculiar to the plaintiffs, and was the natural and proximate consequence of the nuisance. And so far as the facts set forth in the declaration legally imported damage or gave rise to it as a necessary result, the plaintiffs were entitled to give evidence of damage, and to recover accordingly. But any damage, which was not the necessary result of the facts stated, or such as they legally imported, was neither provable nor recoverable in the absence of circumstantial allegations connecting it with the imputed cause. On recurring to the declaration, we find it stated, by way of inducement, that the plaintiffs were manufactur-

ers of lumber and timber "for market at various places on Lake Michigan, in the states of Michigan, Illinois and Wisconsin," while nothing is alleged to show that the lumber in question was destined for any particular market, or that any particular market was lost to the plaintiffs.

It is, therefore, manifest that the facts laid in the declaration do not connect the loss of the Chicago market, or the loss of any particular market, or the scale of prices in any such market, with the cause of the damage suffered by the plaintiffs; and it is equally plain that the loss of the Chicago market cannot be regarded as a necessary result of the detention or destruction of the rafts in Grand river, or, as a consequence, legally imported by the facts pleaded. For this error the judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.

---

Subsequently, October 31st, *Norris & Blair*, on behalf of the defendants in error, made the motion mentioned in the opinion below.

PER CURIAM.

Action on case against fourteen defendants, some of whom appeared and pleaded, and others suffered default. Verdict on the issue was rendered for the plaintiffs, and the jury trying the issue assessed damages against the defaulted defendants, and a joint judgment was rendered against all except three, as to whom the cause was discontinued. A portion of the defendants bring error, and, having taken proceedings for severance, the case is brought to a hearing

as to them, and the judgment is ordered to be reversed for the admission of improper evidence upon the question of damages.

Motion is now made on behalf of the defendants in error to dismiss the writ of error for various informalities and irregularities, one of which is, that one of the necessary parties was not named in the writ. Affidavits are filed excusing the delay in making the motion, but we think it comes altogether too late. The case stood over for decision one term after argument, and the defects were never pointed out until now. We should never reach an end of litigation if we should permit such questions to be raised after judgment.

If this motion is not granted, it is then insisted that the order for judgment in this court should be so framed that it will reverse the judgment below only as to those defendants who sued out the writ of error. But we cannot do this. When a judgment is severable, it may be reversed in part and affirmed in part; but a judgment which is an entirety against several parties, whether in tort or *assumpsit*, if reversed as to one must be reversed as to all.—*Bac. Abr. Tit. "Error," (M.) ; Sargeant v. French, 10 N. H., 444; Sheldon v. Quinlen, 5 Hill, 441.* This is so notwithstanding the error sustained affected one of the defendants only; as where one was an infant and appeared by attorney,—*Arnold v. Sandford, 14 Johns., 424; Cruikshank v. Gardner, 2 Hill, 333;* or one was protected as a judicial officer while the other was liable,—*Harman v. Brotherson, 1 Denio, 537;* or judgment was rendered against two, one of whom had not been brought in by process or otherwise,—*Richards v. Walton, 12 Johns., 434.* But in the case before us the error for which judgment is reversed affected all the defendants alike, inasmuch as it gave the jury an erroneous standard for the estimation of damages.

So strictly is the rule to which we have referred applied, that it is held that a release of errors by the party against whom the error was committed will not bar the writ as to the others.—*Blanchard v. Gregory, 14 Ohio, 413.*

The judgment must be entered in the usual form.