# Gold *versus* The City of Philadelphia.

1. A municipal corporation, charged with the duty of keeping the highways in repair, is not liable to the owner or occupier of property fronting thereon for the loss to his business resulting from the neglect of such duty.

2. One who is injured by a public nuisance, either in his person or in his property, cannot have his remedy by an action unless he can show a damage which is peculiar to himself, and different in kind and degree from, and beyond, that which is sustained by the general public.

January 12th, 1887. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ. CLARK, J., absent.

ERROR to the Court of Common Pleas No 2, of *Philadelphia county :* Of July Term, 1886, No. 130.

Case by Anna Gold against the city of Philadelphia, to recover damages, alleged to have been sustained by her by reason of the falling off in patronage at her inn, through the negligence of the defendant in not repairing and keeping in passable condition the highway upon which it was situated. Plea, not guilty.

By agreement of parties, the case was referred to *E. Coppeè Mitchell, Esq.*, as referee, under the Act of June 16th, 1836.

The facts of the case appear in his report as follows:

The Germantown and Perkiomen Turnpike Road Company was incorporated by the legislature by an Act passed 12th February, 1801, by which statute the courses and distances of the road were prescribed, and also the width, level, and manner of construction. In section 9 of that Act it was provided " that at least twenty feet of the road was to be made an artificial road-bed, with wood, stone, gravel or any other hard substance, well compacted together, and of sufficient depth to secure a solid foundation for the same; and the said shall be faced with gravel or stone pounded, or other small hard substance, in such a manner as to secure a firm and even surface," etc., and the company was required to keep the same in good and perfect order, and allowed to collect tolls from travelers thereon. Under this authority the road was built.

By Act of Assembly of March 26th, 1865 (Pamphlet Laws, 570), certain rights and privileges, which had been reserved by the state by the original charter, to wit, to resume possession of the road upon paying a valuation, were transferred to and vested in the city of Philadelphia. And, by that Act, it was provided that, as soon as the appraised value should be paid by the city, all tolls upon the road should cease. Subsequent statutes were passed on the subject of the method of making the appraisement, the last one of which was the Act of 27th May, 1871 (Pamphlet Laws, 1250). In the manner pointed out by this last statute, the appraisement of the road was made, the amount was paid by the city, and the road relieved from toll. The city took possession of this road under these Acts of Assembly on the twenty-eighth day of October, 1874, and by them the duty of keeping the road in proper condition for travel was laid upon the city.

On the question whether the city had neglected to repair this road, the weight of the evidence was overwhelming. It was proved by many witnesses that the road, especially in the winter time, was in very bad condition during the whole period which elapsed from the taking possession by the city until the day of beginning this suit, the summons in which was issued March 4th, 1882. It cannot be said that the road was impassable at any time, for the fact is that at the worst times persons did go through; but it was proved beyond dispute, and I find as a matter of fact, that the defendant neglected its duty with respect to this road, that it was in a condition which made it inconvenient and unsafe for ordinary travel, and that with respect to it the defendant was guilty of negligence.

The plaintiff, Mrs. Gold, is the widow of James L. Gold,

who kept an inn fronting on this road, in Chestnut Hill, for many years prior to his death. He died in 1874, and, from that time to the day of bringing suit (and since), the same inn has been kept up by the plaintiff, who was his widow and succeeded him in the business. During the whole occupancy of the plaintiff and her deceased husband, they were tenants, under a lease from year to year, of the premises.

Prior to the year 1874, the business at this inn was prosperous. It was the only inn on that road for the accommodation of farmers and drovers. It was the habit of certain cattle dealers to go through the grazing districts of Bucks and Montgomery counties to buy and collect cattle, and drive them down this road to the city of Philadelphia to market. It was considered very desirable by these drovers to arrive at market, in Philadelphia, in the morning; and, as the inn was situated at a convenient distance from the cattle market, they were in the habit of stopping there over night with their droves of cattle and their servants. This was a regular business for which preparations had been made by the building of extensive cattle sheds and other conveniences, and which had been carried on for many years, and was a source of constant profit to the persons keeping the inn. It was also frequented by farmers and clothing dealers.

Little or no work was done upon the road by the defendant after taking possession in October, 1874. Many complaints about the bad condition of the road were made to the proper departments of the city of Philadelphia, not only by the plaintiff herself, but also by policemen, neighbors, persons traveling along the same and the assistant commissioner of highways of that district. But all these complaints were without avail to induce the city to do its duty and put the road in proper repair. In addition to this, in the fall of 1880, the defendant graded Gowen avenue, at Mount Airy, some distance below the inn of the plaintiff, and, from the cuttings made necessary by that grading, had obtained a quantity of red or yellow earth or loam, which was spread upon portions of the road in question with the intention of grading it. During the winter after this red or yellow earth or loam was put upon the road, the condition of it was very bad. The ruts and holes, which had been allowed to grow deeper in the old artificial bed of the road, were covered and hidden from sight by the soft earth thus put on top of them; and, when the rains came, and this soft earth was turned into mud, these old holes served as pitfalls for travelers, who, by reason of the covering of mud, were unable to see them. Still, I am not able to say that, even during this winter, the road was impassable for teams. The fact is that, even at the worst, some

persons did habitually go over the road; but its condition was such that it was avoided by many who had been in the habit of going over it, and the stream of travel past the plaintiff's inn was undoubtedly greatly decreased on account of the condition of this road.

A great deal of testimony was taken to show the specific items of damage done to the plaintiff, by reason of the condition of this road. She claimed that she was entitled to recover the profits lost up to March 4th, 1882; the value of the good-will which was lost; the cost of keeping her useless team; the moneys expended by her in freight and express charges; the cost of erecting cattle sheds, which were rendered useless by the breaking up of that business; compensation for the prevention of access to her own premises, and for being prevented from using the highway in her business; and for being compelled to take a circuitous route from and to the markets.

In the view which I take of this case, the consideration of these claims for damages will not be necessary.

The defence relied on by the city was:

1. That it had been decided, with respect to this very road, that it was not the duty of the city to keep up an artificial highway like that described in the Act of 1801. That it was sufficient for the city to keep the said highway safe and convenient for ordinary travel as a country or dirt road: Commonwealth v. The City, 11 W. N. C., 485.

2. That under no circumstances could the plaintiff recover in this action, inasmuch as the obligation imposed upon the city to keep this road in repair was a public duty, a neglect to perform which was punishable by indictment; and that no one was entitled to a private action for negligence against the city, unless he could show some injury peculiar to himself, and different in kind from that which was suffered by the general public.

Before, however, proceeding to discuss the law in the case, I will, in answer to the written request of the plaintiff's counsel, make findings upon certain questions of fact.

He requested me to find:

1. That the defendant, having been under a duty to maintain Germantown avenue since October 28th, 1874, in a condition safe and convenient for ordinary travel, has wholly failed to perform such duty, and is therein guilty of gross negligence.

I find that to be true, as stated.

2. That, since January 1st, 1874, the plaintiff has been from year to year tenant of certain premises on Germantown avenue, Chestnut Hill, where the plaintiff has kept an inn for the accommodation of farmers, drovers and others, for which she has duly paid license.

The averments contained in this clause I find to be true.

3. That the plaintiff has shown that she has been injured by the defendant's negligence in a manner peculiar to herself and beyond any injury sustained by the general public.

*a.* In that Germantown avenue is the only means whereby plaintiff and others can have access to the inn, and that egress therefrom and ingress thereto have been prevented by obstructions in the highway in front of the premises.

*b.* In that she was prevented from carrying goods, etc. (necessary to her business), by means of her own team, over this highway, and into her premises, by reason of the unsafe condition of the road, and the obstructions existing in front of her premises, thereby being put to increased expense, besides losing the use of her team.

*c.* In that plaintiff was prevented, in 1881, from passing over the highway, and was compelled to take a circuitous route, because of the obstructions in the highway.

*d.* In that plaintiff's customers were, by reason of the obstructions left in the highway by the defendant's negligence, prevented from reaching the inn, whereby plaintiff lost the profit of their patronage.

*e.* In that, because her profits were so reduced, the goodwill of her business has been rendered valueless.

*f.* In that she was compelled to incur expense, and to lose the time and labor of her servants in repairing the highway immediately in front of her premises twice every year.

*g.* In that she, having erected cattle sheds for the accommodation of her customers, has lost the moneys so expended, because the sheds are now useless and valueless.

I am unable to find as requested in this clause. I do not think that the injury done to the plaintiff by the defendant's negligence has been peculiar to herself and different in kind from that sustained by the general public.

*a.* Inasmuch as the plaintiff's inn was not on a corner of the street, but fronted on Germantown avenue and had no other outlet, it may be said that Germantown avenue is the only means whereby the plaintiff and others can have access to the inn; but, after traveling a short distance on Germantown avenue, one desiring to go from the inn to Germantown or Philadelphia might have turned off and taken a longer and more circuitous route. I do not find that egress from and ingress to the inn have been prevented by obstructions in the highway in front of the premises. I do find, as before stated, that Germantown avenue, between the plaintiff's inn and Mount Airy and in front of plaintiff's premises, was not kept in a condition safe and convenient for ordinary travel, and

that many persons were prevented, by that condition of the road, from passing by and stopping at the plaintiff's inn.

b, c, d, e, f, g. Under the view, taken by me of the plaintiff's right to recover, it is unnecessary to pass more particularly than I have already done upon the other heads of this item. I believe that the plaintiff's profits were reduced, and her business rendered much less valuable, by the condition of this road. It is true that she did incur expense in repairing the highway immediately in front of her premises. It is true also that she did have cattle sheds upon her premises, sufficient to accommodate a large number of cattle, which are now comparatively valueless because few drovers now pass that way.

4. That in 1874 plaintiff's business was productive, her net profit for the year being $950.84, besides which she got the living of a family of seven persons out of the business.

5. That the injuries, resulting in the special damage, flowed directly from the defendant's negligence, which was the *causa causans* producing the plaintiff's loss, without which plaintiff would have realized the amounts of the profits lost. The evidence clearly showing that the inn was well kept and popular so long as the plaintiff's customers were able to reach the place.

6. That plaintiff has shown a loss in the sum of $9,084.54, which had accrued to plaintiff on March 4th, 1882, the day on which the writ in this action issued.

These clauses relate to the question of damages. It is unnecessary for me to consider them more specifically than I have already done, inasmuch as I think the plaintiff has no right to recover damages in this action at all. I find from the evidence that the plaintiff's inn was well kept and popular, so long as the road was in condition to enable her customers to pass that way in reaching the markets of the city of Philadelphia.

I now proceed to consider the question of law arising from the foregoing state of facts.

The only question in the case is this : Has the plaintiff shown that the negligence of the defendant has caused her an injury special to herself, and different in kind from that sustained by the general public?

The general rule is well settled that one who is injured by a public nuisance, either in his person or in his property, cannot have his remedy by action, unless he can show a damage which is peculiar to himself, and different in kind and degree from and beyond that which is sustained by the general public.

Nearly all of the cases in which plaintiffs have succeeded in fastening upon municipal corporations a liability, arising from negligence in keeping highways in proper and safe condition,

are those of travelers upon the highway. One who is traveling along the highway, and is injured, either in his person or in his property, as the result of defects in the highway, can undoubtedly recover all the damage suffered by him from the municipality whose duty it was to keep the highway in repair, and who has neglected to do that duty.

But, even in cases of travelers, the courts have been prompt to apply the doctrine of contributory negligence, and it is well settled in a number of cases that, if the unsafe condition of the highway is known to the traveler before he enters upon it, he cannot recover; because his going over the road, which he knew to be unsafe, was contributory negligence on his part, which defeats his right. The duty of the municipality to the traveler on her highways, therefore, with this limitation, may be stated thus: That the municipality must keep the highway in condition, safe and convenient for ordinary travel, or give notice to the traveler that it is not in safe condition. The effect of notice brought home to the traveler before he enters the unsafe highway is to put upon him the responsibility for any injury that may happen to him.

In City of Erie *v.* Magill, 12 Weekly Notes, 409, decided in December last by the Supreme Court, the law was stated by the court below in the following words:

Whatever may have been the condition of the street, or however dangerous, if the plaintiff knew of such danger and could have avoided it by turning aside, or by going to the opposite side of the street, but, instead of doing so, chose to run the risk of passing over the dangerous spot, and so encountered the hurt or injury complained of, she would be guilty of what is called in law contributory negligence, and the verdict must be for the defendant.

This was approved by the Supreme Court as a correct statement of the law. In the opinion of the Supreme Court, the following language of the Supreme Court of Massachusetts is quoted with approbation:

It is well settled that, if a person knows a way to be dangerous, when he enters upon it, he cannot in the exercise of ordinary prudence proceed and take his chances, and, if he shall sustain damage, look to the town for indemnity: Wilson *v.* Charlestown, 8 Allen, 137.

But there is a manifest distinction between one who is a traveler on the highway and one who, like the plaintiff here, has received no direct injury, but sues for consequential damages, as the occupier of a house and lot fronting upon the highway. It is true that the plaintiff claims that she desired to travel over the highway, and was prevented by reason of its condition; that the horse and wagon which she kept and

[Gold *v.* The City of Philadelphia.]

owned was thereby rendered of less use than they would have been had the highway been in proper repair; that, when she did use her horse and wagon, she was compelled to spend more time and labor by taking a circuitous route, so that, instead of bringing her goods along the highway by means of her own horse and wagon, as she had been accustomed before to do, she was compelled to send them by the railroad and express company and pay charges of freight upon them. But I do not think that her position as one intending to be a traveler makes her injury at all different in kind from that which was suffered by every other member of the general public, who desired to travel on that highway and refrained from doing so because it was unsafe.

The only other claim of the plaintiff for damages depends upon her being an occupier of a house and lot fronting upon the highway; and I am unable to see how the damage done to her, as such occupier, by the condition of this road was different in kind from that of every other citizen occupying premises situated similarly, or premises which might have been more conveniently approached by means of this highway than they could be by other highways to which they had access. It is the right of all citizens to travel upon all the highways of the commonwealth. The circumstance that some of them, by reason of proximity, or other cause, may be accustomed to use one highway more than others do, makes a difference in the amount of damage which accrues to them by being deprived of the use of that highway; a difference in degree merely, and not in kind. Any citizen of Philadelphia, having occasion to pass over that road, and being prevented from doing so by reason of its unsafe condition, would have, in theory at least, the same right of action against the city as is claimed by this plaintiff on account of the denial of that right.

The general principle is well stated by Mr. Bigelow, in his note to Rose *v.* Miles (Leading Cases of Law of Torts, 471).

If then the right invaded or impaired is a common or public one, which every subject of the state may exercise and enjoy, such as the use of a highway or a canal, or a public landing place, or a common watering place upon a stream,— in all such cases, a mere deprivation or obstruction of the use, which excludes or hinders all persons alike, from the enjoyment of the common right, and which does not cause any special or peculiar damage to any one, furnishes no ground of action in favor of an individual.

The opinion of Chief Justice BIGELOW, Willard *v.* Cambridge, 3 Allen, 574, is also a clear and concise statement of the law on this point. The action was tort for obstructions in a highway which defendant was bound to keep in repair,

[Gold *v.* The City of Philadelphia.]

whereby plaintiff, who had a wharf, was injured in his business; his customers were unable to come to his wharf; he lost sales and was subjected to increased expense and trouble in delivering what he had already sold, and in getting in his crops. He had been obliged to abate rents of houses, etc.

The defendants demurred, which demurrer was argued before the full bench.

The opinion of the court was as follows:

Bigelow, C. J.—We cannot distinguish this case from those in which it has been determined by this court, that no action at law can be maintained, to recover damages for the obstruction of a highway, unless a party can prove that he has sustained some special and peculiar damage thereby, different in kind, and not merely in degree, from that which is occasioned to other persons by the alleged nuisance: Quincy Canal Co. *v.* Newcomb, 7 Met., 276; Brainerd *v.* Connecticut R. R., 7 Cush., 511; Blood *v.* Nashua and Lowell R. R., 2 Gray, 140; Brightman *v.* Fairhaven, 7 Id., 271; Harvard College *v.* Stearns, 15 Id.; Hartshorne *v.* South Reading, *ante*, 504. No doubt the annoyance and injury to the plaintiff by the acts alleged in the declaration were much greater in amount than those which were caused to any other person having occasion to use the same highway. But it was a similar sort or species of damage. His near proximity to the bridge and the nature of the business in which he was engaged did not change the kind of damage to which he was subjected, but only increased the extent of the injury. Every traveler having occasion to pass the bridge or to transport goods or merchandise across it, incurred in some degree additional trouble and expense, as well as a loss of time, by being compelled to seek another and more circuitous route. These elements of damage are the same as those claimed by the plaintiff, and are not special or peculiar to him, so as to furnish a good cause of action. The same is true of the alleged loss of rents. Every person owning property on the highway leading to the bridge, near to or remote from the place of the alleged obstruction, sustained a similar injury: Sm. *v.* Boston, 7 Cush., 257. The case of Stetson *v.* Faxon, 19 Pick., 147, is distinguishable from the case at bar, by the leading fact that there the nuisance causing the obstruction to the plaintiff's premises, was erected directly against and abutting on the estate of the plaintiff, and diverted travel therefrom, and it did not appear that any other person sustained a similar injury.

Demurrer sustained.

In Mrs. Gold's case there was no pretence that she had any right of passage over the street more than such as was common to all the public, and the extent of the injury done her is

[Gold v. The City of Philadelphia.]

that, by the negligence of the defendant, the exercise of this right has been rendered less safe and convenient than it ought to have been: Bigg v. Corporation of London, L. R., 15 Equity, 376.

In Hill v. City of Boston, 122 Mass., 344, the whole subject of the liability of municipal corporations to civil actions for neglect of duty, was most critically and fully examined in an able opinion, by Chief Justice GRAY, and after a careful review of the decisions in England, on this subject, he reaches the following conclusion:

The result of the English authorities is, when a duty is imposed upon a municipal corporation for the benefit of the public, without any consideration or emolument being received by the corporation, it is only where the duty is a new one, or is such as is ordinarily performed by trading corporations, than an intention to give a private action for a neglect of its performance is to be presumed.

And after going over the American cases on the same subject, the learned Judge comes to the conclusion that those decisions, which hold the law to be otherwise, are not founded on sound principles.

The duty of keeping the highways within the limits of the city in repair is not a new one. No consideration or emolument is received by the corporation for the performance of that duty, and, according to the doctrine stated, the intention to give a private action for its neglect is not to be presumed. The duty is imposed solely for the benefit of the public, and is not of a nature ordinarily performed by trading corporations.

It may be added to this, that the results of holding that the city of Philadelphia is responsible to the property owner for consequential damages, arising from neglect in repairing the streets, would, in my opinion, be very unfortunate. Who shall say what condition of disrepair, or what amount of negligence, shall be sufficient to warrant a verdict against the city? If every man who lives upon a street has a right of action against the city every time some portion of the street, more or less distant from his residence, shall fall into an unsafe condition, and be so allowed to remain for any length of time, it is impossible to say what number of suits against the city might be brought upon cases more or less trifling.

From these considerations, I am of the opinion that, although the evidence establishes the duty of the defendant to keep the streets in repair, and that the defendant has neglected to perform that duty, and that consequential damage has been suffered by the plaintiff, as the result of that negligence, I do not think she has the right to maintain this private action. I therefore find and report in favor of the defendant.

5 AMERMAN—13

Exceptions were filed by the plaintiff which were dismissed and judgment entered for the defendant, whereupon the plaintiff took this writ and assigned for error, *inter alia*, the entering of judgment for the defendant.

*Theodore Cuyler Patterson (Edward Hopkinson* with him), for plaintiff in error.—The injury inflicted on the plaintiff in the case at bar is particular, and different in kind from that sustained by the public, and that by the words "the public" is meant the people at large, the citizens of the state, and not that very limited number of the whole body of the public who happen to live on Germantown avenue, at Chestnut Hill. The referee does not find that any other person was injured, but even had the injury extended to others, the plaintiff could yet maintain her action for her own particular injury. "It is no defence for a wrongdoer to show that he by the same act inflicted like injury upon other persons. No matter how numerous the persons, each is entitled to compensation for his injury:" Francis *v.* Schoellkopf, 53 N. Y., 152; Stetsom *v.* Faxon, 19 Pick., 147; Lansing *v.* Smith, 4 Wend., 25; Wetmore *v.* Story, 22 Barb., 497; Spencer *v.* Railway, 8 Simons, 193; Borrows *v.* Pixley, 1 Root, 362; Wood's Law of Nuisances, Sec. 678; Sansom *v.* Smith, 8 Simons, 272; Brown *v.* Watson, 47 Maine, 161.

The injury to the plaintiff, being peculiar to herself and different in kind from that sustained by the public, the plaintiff is entitled to maintain her action and recover to the extent of her loss:—

1. Because her right of access to and from her premises, not only for herself but for her customers also, has been hindered. The cases are to the effect, that an occupant of land bordering on a highway has, by such occupancy, a right to free access; that such right is distinct from his right, as one of the public, to pass over the highway, and if this right be impeded, he may recover his loss of profits in the business done on the premises: Rose *v.* Groves, 5 Man. & G., 613; Lyon *v.* Fishmonger Co., 1 App. C. (L. R.), 662; Fritz *v.* Hobson, L. R., 14 Chan Div., 542; Pittsburg R. R. *v.* McCutcheon, 18 W. N. C., 527; Venard *v.* Cross, 8 Kansas, 248; Knox *v.* New York, 55 Barb., 404; Wetmore *v.* Story, 22 Id., 497; Smith *v.* Boston, 7 Cush., 256; Farelly *v.* Cincinnati, 2 Disney, 541; Stetsom *v.* Faxon, 19 Pick., 147; Williams *v.* Providence, 11 R. I., 447; Prosser *v.* Ottumwa, 42 Iowa, 511; Garitee *v.* Baltimore, 53 Mary'd, 422.

2. Because the regular customers of the plaintiff were diverted from her inn and she thus lost the profits of her business: Dillon on Mun. Corp., sec. 730 and note; Iveson *v.*

[Gold v. The City of Philadelphia.]

Moore, Ld. Raymond, 486; Wilkes v. Hungerford Market, 2 Bing. N. C., 281; Senior v. Metr. Railway, 2 H. & C., 258; Benjamin v. Storr, L. R. 9, C. P., 400; Fritz v. Hobson, L. R. 14 Chan. Div., 542; Borrows v. Pixley, 1 Root (Conn.), 362; Stetsom v. Faxon, 19 Pick., 147; Prosser v. Ottumwa, 42 Iowa, 511; Farelly v. Cincinnati, 2 Disney, 541; Pittsburg v. Scott, 1 Barr, 309; Garitee v. Baltimore, 53 Mary'd, 422; Enos v. City of Hamilton, 27 Wisconsin, 256; Spencer v. Railway, 8 Simons, 193; Cook v. City of Bath, L. R. Eq. Cases, 177; Blanc v. Klumpre, 29 California, 156.

Nor are those which have been already stated the only grounds upon which the plaintiff is entitled to maintain her action. The referee found not only that the defendant was guilty of negligence in failing to repair, but that the city put quantities of soft earth or loam directly in front of plaintiff's premises, and that this deposit was increased by other quantities of mud washed down by the rain from that part of the road on the hill above the inn, and lodged in front of the inn and entrances thereto.

*Charles B. McMichael (Charles F. Warwick* with him), for defendant in error.—No person can have an action for a public nuisance, but if he suffers a special damage from it he may maintain a special action for that damage, but he must show that it distinctly bears that character. The diversion of ordinary traffic is not such an injury: Rex v. The Bristol Dock Company, 12 East., 429; Hubert v. Grove, 1 Esp., 148; London and Northwestern Railroad Co. v. Smith, 1 Mac. & G., 216.

All the cases in which the claim to compensation has, under such circumstances, been directly recognized, are cases affecting land as land: Ricket v. The Directors of the Metropolitan Railway Company, Law Rep., 6 English and Irish Appeal Cases.

In Hill v. City of Boston, 122 Mass., 344, GRAY, C. J., cites the case of Russell v. Men of Devon, 2 T. R., 667, in which it was held that an action would not lie against the inhabitants of a county for an injury sustained in consequence of a county bridge being out of repair, and the remarks of ASHHURST, Judge, in that case, are applicable to the case at bar.

"It has been said that there is a principle of law on which this action may be maintained, namely, that where an individual sustained an injury by the neglect or default of another, the law gives him a remedy. But there is another general principle of law which is more applicable to this case, that it is better that an individual should sustain an injury than that the public should suffer an inconvenience."

Cases are cited by Mr. Chief Justice GRAY to the same effect in New York, Bartlett *v.* Crozier, 17 Jones, 439; New Jersey, Freeholders of Sussex *v.* Strader, 8 Harrison, 108; Michigan, Commissioners of Highways *v.* Martin, 4 Mich., 557; Ohio, Hamilton Commissioners *v.* Mighels, 7 Ohio St., 109; New Hampshire, Eastman *v.* Meredith, 36 N. H., 284.

The Pennsylvania cases are alluded to as follows:

" Of the two Pennsylvania cases cited, one was the case of a city being in possession of a public wharf, exercising exclusive supervision and control over it, and receiving tolls for its use, and therefore rightly held liable to an action for special injury to an individual, in consequence of its neglect to keep the wharf in proper condition for use: Pittsburgh *v.* Grier, 22 Pa. St. Rep., 54.

In the other, a city which was bound by its charter to keep the streets in repair, was held liable to an action for an injury occasioned by its neglect to do so: Erie *v.* Schwingle, 22 Pa. St., 384.

But in Pennsylvania, town and counties are held liable to similar actions: Dean *v.* New Milford, 5 W. & S., 545; Humphreys *v.* Armstrong, 56 Pa. St., 204; Rapho *v.* Moore, 68 Pa. St., 404.

Mr. Justice PAXSON delivered the opinion of the court, February 14th, 1887.

The learned and able report of the referee in this case renders an extended discussion of it unnecessary. There is no allegation that he has not found the facts correctly, but the plaintiff contends that he has erred in his conclusions of law. In other words that upon the facts as they are conceded, she is entitled to recover.

The plaintiff is the proprietor of an inn at Chestnut Hill, fronting on the main road, or Germantown avenue, at which a large and prosperous business had been carried on for a long time. Germantown avenue was a turnpike road for many years and while such was kept in reasonably good condition. The city took the road in 1874, and since that time until this suit was brought, said street has been neglected by the city authorities to a degree that rendered travel upon it exceedingly inconvenient, if not dangerous. The plaintiff alleges and the referee finds that in consequence of the ill condition of the road, her business fell off to a considerable extent and the profits of her inn were correspondingly diminished.

The learned referee finds, and this finding is the subject of the first assignment of error, that " I am of the opinion that although the evidence establishes the duty of defendant to keep the street in repair, and that the defendant has neglected

to perform that duty, and that consequential damage has been suffered by the plaintiff as the result of that negligence, I do not think she has the right to maintain this private action. I therefore find and report in favor of the defendant."

This finding raises the pivotal question in the cause. It is one of very considerable public importance, being substantially whether a municipal corporation, charged with the duty of keeping the highways in repair, is liable to the owner or occu-pier of property fronting thereon for the loss to his business resulting from the neglect of such duty.

The referee does not find that access was cut off from plain-tiff's property, nor that the highway aforesaid was impassable. It was, however, in such bad condition, that travel sought other ways when practicable.

It was decided by this court in Com. *Ex. Rel.* Attorney General *v.* The City of Philadelphia, 11 W. N. C., 485, that the authorities of the said city, after taking possession of this turnpike road, were not bound to keep it up as a macadamized road ; that it was required only to keep it in fit condition for ordinary travel, the same as other county roads.

The learned referee ruled this case upon the familiar and well settled principle, *that one who is injured by a public nui-sance, either in his person or in his property, cannot have his remedy by action, unless he can show a damage which is pecul-iar to himself, and different in kind and degree from and be-yond that which is sustained by the general public.*

The plaintiff contends that the referee erred in his applica-tion of this principle to the facts of her case. We do not think so. The injury was one common to all persons who traveled on the road and who resided thereon. The annoyance and inconvenience to some may have been much greater than to others, but it was of the same kind and differed only in degree.

It is significant that no Pennsylvania case has been called to our attention, nor am I aware of any, in which a recovery has been sustained under similar circumstances. The author-ities cited for plaintiff, though numerous, do not meet the case. A large number of them were instances in which a traveler had been injured as a consequence of a neglect to keep the highways in repair. No one doubts that a traveler so injured has his remedy against the defaulting municipality for the obvious reason that he has sustained a special injury, not com-mon to others. This principle has been settled by hundreds of decisions in this state and elsewhere.

Nor must we be misled by cases referring to business or trading corporations. They differ from municipal corpora-tions in this that the former are organized for private purposes and for gain; whilst municipal corporations are organized

[Dickerson's Appeal.]

solely for the general good of the people. When a duty is imposed upon a municipal corporation for the benefit of the public, no consideration or benefit is received by such municipality, as in the case of a trading corporation, hence no implication arises of liability to the individual citizen for any injury which he has suffered in common with other citizens resulting from a neglect of such duty. To sustain a contrary doctrine would be disastrous to municipalities, and consequently to the general public. If we once throw open the door to a recovery in such cases, how are we to measure the extent to which a public highway may be out of repair to entitle owners of property abutting thereon to recover damages? Such questions would have to be referred to a jury whose standard of duty would be as shifting as their verdicts would be uncertain and in many instances oppressive.

The case of the Pennsylvania Railroad Company's Appeal, 18 W. N. C., 418, cited by the plaintiff, has no application, for the reason that it arose between a private corporation and a citizen. The former was attempting to lay a switch in front of plaintiff's property, having, as this court held, no authority to do so. The plaintiff claimed and proved a special injury, and the company was enjoined. I refer to this case only as one of many of the same class, cited by plaintiff, and which are not in point.

I leave the case with these general remarks. The referee has collected the authorities with much care, and we are entirely satisfied with his conclusions thereon.

Judgment affirmed.

STERRETT, J., dissents.