JOHN B. KELLY, Inc., v. LEHIGH NAV. COAL CO., Inc., et al.

No. 8679.

Circuit Court of Appeals, Third Circuit.

Argued April 4, 1945.

Decided Oct. 4, 1945.

744

John Morgan Davis and J. Charles Short, both of Philadelphia, Pa., for appellant.

E. Russell Shockley and Arthur Littleton, both of Philadelphia, Pa., for appellees.

Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This appeal is from an order of the District Court dismissing the bill of complaint in this case. Plaintiff is a Delaware corporation. The defendants are corporations of the Commonwealth of Pennsylvania. The first paragraph of the bill of complaint alleges that "the amount in controversy exceeds, exclusive of interest and costs, the sum of Three Thousand Dollars ($3,000)." The complaint goes on to say that plaintiff is in the brick masonry construction work business, located in Philadelphia. Its property borders the eastern bank of the lower Schuylkill River for 100 feet and on those premises, which it owns in fee simple, are located its piers and docks. It is then stated that the defendants, who are coal mine operators with plants adjacent to the upper Schuylkill River, or its tributary streams, clean their coal with large quantities of water and discharge the refuse coal dust, fine coal, culm, silt, wastes, etc., into the Schuylkill and its tributaries. The bill further sets up that large deposits of the said waste materials from past operations have accumulated on the lands of the defendant; that the defendants have failed to properly secure these and as a result of natural erosion they have heavily charged and polluted the Schuylkill and its tributary streams. It is said that the waste has moved down stream and caused the bed of the Schuylkill River adjacent to plaintiff's property to so rise that it is impossible to bring boats close enough to plaintiff's property to unload them which latter process could be accomplished with the

Schuylkill bed in its normal condition. It is charged that the said waste materials have and are moving progressively down stream *to and upon the premises of the plaintiff* and are destroying the value of the Schuylkill River for navigation and the value of plaintiff's property for the receipt of building materials transported by boat or barges. Paragraph 11 of the bill of complaint reads: "The fine coal, coal dirt, culm, refuse materials and silt wastes discharged by the defendants, together with those wastes eroded from the culm banks and deposits of the defendants, are so united, combined and intermingled within the waters of said Schuylkill River and its tributary streams as to be impossible of tracing to any individual defendant, when dredged from the said river adjacent to plaintiff's premises and thus the injury and damage to the plaintiff is brought about by the united and combined acts of the defendants." It is further asserted that the bed of the river has been so raised and its channel so narrowed "that the level of its waters is raised abnormally whenever there is any appreciable increase in the quantity of water in said River, through rains or otherwise, thus causing it to overflow its banks *at and along plaintiff's property* and resulting in great damage to the plaintiff's property and greatly disrupting its business." It is stated that both the Schuylkill River and the Delaware River, into which the Schuylkill River discharges at Philadelphia, are navigable rivers of the United States and the deposit or discharge of the waste materials into the Schuylkill River and its tributary streams is prohibited by Section 13 of the River and Harbor Act of March 3, 1899, 33 U.S.C.A. § 407, and other acts of the Congress. It is alleged that the said discharge and deposit is a nuisance by reason of the fact that such waste materials are carried by the river "thus affecting in various ways and to various degrees all communities, and their residents, along said river." Paragraph 15 of the bill of complaint reads: "That the wanton, wilful negligence and recklessness of the defendants in carrying on their coal operations in the manner hereinbefore described *are a continuing trespass* which constantly increases the deposits of fine coal, coal dirt, silt, culm and other waste materials in the bed of said River and thus threaten to make permanent the injury and damage to plaintiff." Paragraph 16 states that by reason of the discharge of

the waste into the Schuylkill and its tributaries, "by the wilful, wanton, reckless and negligent acts of the defendants, the plaintiff has suffered large and irreparable damages through the permanent depreciation of the value of its property and through the curtailment of the lawful uses to which such property might be put by plaintiff."

Plaintiff then, asserting that it needs equitable relief, prays that:

"1. That the said *defendants*, their agents, servants and employees, be *perpetually enjoined* from washing, depositing, placing or discharging any fine coal, coal dirt, culm, silt, wastes or refuse material of any kind, from their mines, collieries, washeries or coal preparation plants, either into said Schuylkill or its tributary streams, or upon any land adjacent thereto where the said waste materials may or can be washed into the said River or its tributaries.

"2. That the *defendants be required* to take adequate *measures and precautions* to prevent the erosion and escape into said Schuylkill River or its tributary streams of the deposits, piles, banks, or embankments of such waste materials previously deposited by the defendants.

"3. That the amount *of damage* sustained by plaintiff through the said illegal acts of the defendants *be ascertained* and the amount so ascertained *be assessed against each defendant in proportion to his contribution to the plaintiff's injury or damage* as determined by this Honorable Court.

"4. That defendants pay to plaintiff all costs necessary to restore the channel of the Schuylkill River adjacent to plaintiff's property.

"5. That defendants pay to plaintiff the costs of this action.

"6. Such other and further relief as this Honorable Court may deem proper." (Emphasis ours)

The District Judge dismissed the complaint on the single ground that "Since, therefore, the action against these defendants is, under Pennsylvania law, several and not joint, and the complaint fails to show that the amount in controversy with respect to the claim against any single defendant exceeds the jurisdictional amount, it is insufficient to show that this Court has jurisdiction of the cause."

Plaintiff, asserting a nuisance and continuing trespass by the defendants to and

upon its property, presents an equitable cause of action. It alleges irreparable damage to that property and to its business and it prays for an injunction against the defendants. In addition, plaintiff does ask that its money damages be ascertained and assessed against each defendant in proportion to his contribution to plaintiff's injury or damage as determined by the District Court, but the hard core of plaintiff's suit is the invasion of its property right and the sought for protection against such trespass.

Pennsylvania law, controlling on substantive matters involved in the present controversy, holds that the liability of the defendants is several and not joint. Little Schuylkill Navigation, Railroad and Coal Co. v. Richard's Adm'r, 57 Pa. 142, 98 Am. Dec. 209; Gallagher v. Kemmerer, 144 Pa. 509, 22 A. 970, 27 Am.St.Rep. 673; Eckman v. Lehigh & Wilkes-Barre Coal Co., 50 Pa.Super. 427. Here, however, the money damage allegations of the bill are merely a collateral item which the District Court can pass upon provided it possesses jurisdiction of the all important injunctive feature of the litigation. Kinney-Coastal Oil Co. et al. v. Kieffer et al., 277 U.S. 488, 48 S.Ct. 580, 72 L.Ed. 961; McGowan v. Parish, 237 U.S. 285, 35 S.Ct. 543, 59 L.Ed. 955; Camp v. Boyd, 229 U.S. 530, 33 S.Ct. 785, 57 L.Ed. 1317.

It is well settled that in an action of this nature, the jurisdictional amount is to be calculated on the basis of the property right which is being injured. If that property right has a value in excess of $3,000 the Federal Court has jurisdiction of such a diversity suit even though the plaintiff had not suffered $3,000 damages at the time suit was instituted. Glenwood Light & Water Co. v. Mutual Light, Heat & Power Co., 239 U.S. 121, 36 S.Ct. 30, 60 L. Ed. 174; Scott v. Donald, 165 U.S. 107, 17 S.Ct. 262, 41 L.Ed. 648; McNeill v. Southern Railway Co., 202 U.S. 543, 26 S. Ct. 722, 50 L.Ed. 1142; Bittermann v. Louisville & Nashville R.R., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693; Berryman v. Board of Trustees of Whitman College, 222 U.S. 334, 32 S.Ct. 147, 56 L.Ed. 225; Ridder Bros. v. Blethen, 9 Cir., 142 F.2d 395; Delaware, L. & W. R. Co. v. Frank et al., 2 Cir., 110 F. 689; Board of Trade of City of Chicago v. Cella Commission Co. et al., 8 Cir., 145 F. 28; Miles Laboratories v. Seignious, D.C., 30 F.Supp. 549. The Glenwood case, supra, well exemplifies the rationale of the above decisions. In that matter, the plaintiff maintained an electric plant and a system of wires furnishing electricity to its consumers. Defendant set up its own wires which interfered, or threatened to interfere, with those of the plaintiff. Though the value of plaintiff's equipment was admittedly in excess of $3,000, the District Court dismissed the complaint on the ground that, since it would only cost $500 to remove defendant's wires, the amount in controversy did not exceed $3,000. The United States Supreme Court, in reversing that decision, said at pages 125, 126 of 239 U.S., at page 32 of 36 S.Ct., 60 L.Ed. 174:

"We are unable to discern any sufficient ground for taking this case out of the rule applicable generally to suits for injunction to restrain a nuisance, a continuing trespass, or the like, viz., that the jurisdictional amount is to be tested by the value of the object to be gained by complainant. The object of the present suit is not only the abatement of the nuisance, but (under the prayer for general relief) the prevention of any recurrence of the like nuisance in the future. In Mississippi & M. R. Co. v. Ward, 2 Black [485], 492, 17 L.Ed. 311, 314, it was said: 'The want of a sufficient amount of damage having been sustained to give the Federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern.' The same rule has been applied in numerous cases, and under varying circumstances.

\* \* \* \* \* \* \*

"The district court erred in testing the jurisdiction by the amount that it would cost defendant to remove its poles and wires where they conflict or interfere with those of complainant, and replacing them in such a position to avoid the interference. Complainant sets up a right to maintain and operate its plant and conduct its business free from wrongful interference by defendant. This right is alleged to be of a value in excess of the jurisdictional amount, and at the hearing no question seems to have been made but that it has such value. The relief sought is the protection of that right, now and in the future, and the value of that protection is determinative of the jurisdiction."

Board of Trade of City of Chicago v. Cella Commission Co. et al., supra, involved the theft and use by the defendant

of plaintiff's market quotations. The Court said at page 29 of 145 F.:

"In a suit to enjoin a threatened or continued commission of certain acts the amount or value involved is the value of the right the complainant seeks to protect from invasion, or of the object to be gained by the bill. It is not the sum he might recover in an action at law for the damage already sustained, nor is he required to wait until it reaches the jurisdictional amount."

Perhaps the latest expression of the doctrine is found in Miles Laboratories, Inc. v. Seignious, supra, where the District Court said, 30 F.Supp. at page 554:

"However, it is a firmly established principle of law that when a litigant seeks an injunction to protect a right, and shows that some invasion of that right has occurred, or been threatened, the test of the jurisdictional amount is the value of the right that is to be protected, and not the extent of the monetary loss or damage that has been suffered or is threatened by the invasion."

Recent United States Supreme Court opinions such as Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248; McNutt v. General Motors Acceptance Corporation, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135; K. V. O. S. v. Associated Press, 299 U.S. 269, 57 S.Ct. 197, 81 L.Ed. 183; and Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L. Ed. 1111, do not conflict with the above rule as applicable to the instant facts. Those decisions indicate that in cases concerning injunctions against public acts, the recent trend of the United States Supreme Court has been to narrow its construction of the jurisdictional amount in controversy. In the Healy case, supra [292 U.S. 263, 54 S.Ct. 702], it was held that the amount of the state tax itself was the matter in controversy "since payment of it would avoid the penalty and end the dispute." The Healy opinion went on to say that "Where a challenged statute commands the suppression or restriction of a business without reference to the payment of any tax, the right to do the business or the injury to it is the matter in controversy." McNutt v. General Motors Acceptance Corporation, supra, stressed so strongly by the appellees, is in the same vein. Plaintiff there sought to enjoin the enforcement of the Indiana Retail Installment Sales Act. The language of Chief Justice Hughes at page 181 of 298 U.S., at page 781 of 56 S. Ct., 80 L.Ed. 1135, quoted in the appellees' brief, shows the special situation existing:

"Respondent invokes the principle that jurisdiction is to be tested by the value of the object or right to be protected against interference. Hunt v. New York Cotton Exchange, 205 U.S. 322, 27 S.Ct. 529, 51 L.Ed. 821; Bitterman v. Louisville & Nashville R. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171, 12 Ann.Cas. 693; Berryman v. Whitman College, 222 U.S. 334, 32 S.Ct. 147, 56 L.Ed. 225; Glenwood Light Co. v. Mutual Light Co., 239 U.S. 121, 36 S.Ct. 30, 60 L.Ed. 174; Healy v. Ratta, 292 U.S. 263, 54 S.Ct. 700, 78 L.Ed. 1248. But in the instant case, the statute does not attempt to prevent respondent from conducting its business. There is no showing that it cannot obtain a license and proceed with its operations. The value or net worth of the business which respondent transacts in Indiana is not involved save to the extent that it may be affected by the incidence of the statutory regulation. The object or right to be protected against unconstitutional interference is the right to be free of that regulation. The value of that right may be measured by the loss, if any, which would follow the enforcement of the rules prescribed. * * *"

In this appeal we are not dealing with the taxing or regulatory authority of a state but with a continuing trespass by private corporations directly affecting plaintiff's right to occupy and enjoy its property and to function as a business organization. Protection of that right both now and in the future is prayed for. That is the controversy the amount of which plaintiff in the first paragraph of the bill of complaint says exceeds $3,000. Later on plaintiff will have to substantiate that allegation but at this time we are not concerned with the trial proof.

Appellees also contend that the bill of complaint shows that the plaintiff is not entitled to the equitable relief or monetary damages prayed for because plaintiff is seeking to enjoin a public nuisance without showing that it sustained a special injury different in kind and in degree from that suffered by members of the general public coming into contact with the nuisance. Again we must examine the bill of complaint as to the special damages plaintiff alleges. That pleading charges that the waste materials have moved and are moving progressively downstream *to and upon the premises of the plaintiff;* that be-

cause of the defendants' negligence and reckless and wanton conduct, the Schuylkill River is caused to overflow its banks *at and along the plaintiff's* property, damaging the latter and greatly disrupting plaintiff's business; that the acts of the defendants are a continuing trespass; that the plaintiff has suffered large and irreparable injuries through the permanent depreciation of the value of its property and through the curtailment of the lawful uses to which such property might be put by the plaintiff.

Appellees urge that the case of Gold v. City of Philadelphia, 115 Pa. 184, 8 A. 386, is controlling on this point. There, an innkeeper, tenant of the premises involved, sued the City of Philadelphia, contending that her business had declined in consequence of the neglect of the City to keep a certain street in repair. It was held that she could not recover. That opinion was sharply confined to its own special facts in Knowles v. Pennsylvania Railroad Co., 175 Pa. 623, 34 A. 974, 52 Am.St.Rep. 860. The latter case is in some respects quite similar to the one at bar and states the present Pennsylvania law on the subject. Plaintiff Knowles was also a contractor. The defendant company had erected a fence across a roadway and by so doing caused the plaintiff to haul his material over a more devious route at greater expense to him. The Court followed the general principle that special or particular damage consequent on interference with a common right affords a cause of action by an individual. In affirming the verdict in favor of the plaintiff it said at pages 629, 630 of 175 Pa., at page 976 of 34 A.:

"It is not possible to reconcile all the cases in which the question whether a private action is maintainable for a loss occasioned by a public nuisance has been considered and passed upon. In England, as well as in our own country, the decisions on this point are conflicting. The loss or damage which is adjudged in some cases to be special, and to authorize a suit by the injured party against the wrongdoer, is held in other cases to furnish no basis for a private action. But a review or extended reference to the decisions of the courts of other states or of England is not deemed necessary, because the case in hand must be determined in accordance with our own adjudications, and these, we think, fully sustain the ruling of the learned court below, and the judgment based thereon.

In Hughes v. Heiser, 1 Bin. [Pa.] 463 [2 Am.Dec. 459], the plaintiff declared that he had prepared rafts with intent to navigate them down a river which was a public highway, and that he did navigate them until he came to a dam erected by the defendant, by which he was prevented from passing down the river with his rafts. It was held that special damage was shown, and his action for it was sustained. To the same effect is Powers v. Irish, 23 Mich. 429. In Dudley v. Kennedy, 63 Me. 465, 'being prevented from fulfilling a transportation contract because of an obstruction of a navigable river by a boom, was deemed sufficient special damage' to support the suit. In [City of] Pittsburg v. Scott, 1 Pa. 309, Duquesne Way was obstructed by the defendant, and the plaintiff (the city of Pittsburg) claimed, inter alia, that it was obliged, by reason of the obstruction, to haul by a circuitous route the stones, dirt and other material required in repairing the public wharf along Allegheny river, between said way and said river. The plaintiff also claimed that its revenue from the wharf was greatly diminished by the obstruction, and that the defendant prevented its wharfmaster from collecting tolls. It was held that the action was maintainable on either ground. It was also held that it was immaterial, so far as the right of action was concerned, whether there was a total or partial obstruction of the way. Pittsburg v. Scott [supra] was approved and followed in Brown v. Watson, 47 Me. 161, [74 Am.Dec. 482], and cited with Hughes v. Heiser, by Sharswood, J., in his opinion in [Pennsylvania & O.] Canal Co. v. Graham, 63 Pa. 290 [3 Am. Rep. 549]. No decision of this court has been brought to our notice which overrules or qualifies either of the Pennsylvania cases we have cited as applicable to the case in hand."

In the situation before us the plaintiff is a lower Schuylkill River riparian owner who charges a continuing trespass to and upon its property resulting in irreparable injury to the property and to its business. In so doing the plaintiff is directly asserting some extraordinary damage beyond that incurred by the general public and we think, comes within the scope of the Knowles opinion.

█ The appellees next argue that under the decisional and statutory law of Pennsylvania relative to the mining industry, it is apparent from the face of the bill

of complaint that plaintiff would not be entitled either to the equitable relief or to the monetary damages sought. Cases of the type of Pennsylvania Coal Co. v. Sanderson, 113 Pa. 126, 6 A. 453, 57 Am.Rep. 445, are cited in support of this. Those decisions at most permit the natural and rightful use of mining land with due care and without negligence. The charges of the bill of complaint are that the damage to the plaintiff has been and is being caused by the negligence and reckless, wilful and wanton conduct and actions of the defendants in the handling of and disposal of the particular mine refuse. Those allegations must be accepted as true for the purposes of the motion to dismiss the bill. Mosher v. City of Phoenix, 287 U.S. 29, 53 S.Ct. 67, 77 L.Ed. 148; Douglas v. City of Jeannette, Pa., et al., 3 Cir., 130 F.2d 652; Furton et al. v. City of Menasha, 7 Cir., 149 F.2d 945.

Finally it is suggested by the appellees that the plaintiff has not gone into specific details on various phases of the matters complained of and that its averments are too general and do not include ultimate facts. The proposition as presented may be material on a demand for particulars but it does not substantially detract from the fact that plaintiff has stated a cause of action against the defendants on which it is entitled to its day in Court and to the opportunity of presenting its proof.

Reversed.