# BERRYMAN *v.* BOARD OF TRUSTEES OF WHITMAN COLLEGE.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF WASHINGTON.

No. 95.   Argued December 13, 1911.—Decided January 9, 1912.

The amount in controversy where the question is whether a contract
of exemption from taxation has been impaired by subsequent legislation is measured by the value of the right to be protected and not
by a mere isolated element, such as the tax for a single year.

In this case the jurisdictional value of amount in controversy *held* to
exceed $2,000, although the actual tax, the collection whereof was
sought to be enjoined on the ground that its imposition impaired the
obligation of a legislative contract, was less than $2,000.

Cases, in which the jurisdictional value of amount in controversy is
limited to the single tax involved, reviewed and distinguished.

The act of March 2, 1867, 14 Stat. 426, now Rev. Stat., § 1889, prohibiting the granting by territorial legislatures of especial privileges
related to conferring new privileges on existing corporations as well
as to granting privileges in original charters; and the prohibition
included all especial privileges such as exemption from taxation.

In construing a statute the court must be controlled by the power

manifested by the act and not by the motive which initiated it; the scope of the act may extend beyond the generating causes thereof.

The rule that exemptions from taxation must be strictly construed against the exemption is as broad as the subject to which it relates; the rule applies not only to the extent of the legislative grant itself but also to the power of the legislature to make it.

A contract for exemption from taxation is an especial privilege, and is none the less within the prohibitions of § 1889, Rev. Stat., because granted to an educational institution; it cannot be regarded as beyond the prohibition because granted as an equivalent.

The fact that Congress failed to disapprove an act of a Territorial legislature does not validate it if the act was passed in direct violation of a prohibitive provision in the organic act. *Clayton* v. *Utah,* 132 U. S. 632.

THE facts, which involve the jurisdiction of the Circuit Court of the United States on the question of the amount involved and also the validity of an act of the legislature of the Territory of Washington exempting property of an educational institution from taxation, are stated in the opinion.

*Mr. Everett J. Smith,* with whom *Mr. Lester S. Wilson* was on the brief, for appellants:

The amount in controversy is the tax in issue and no more, and as that is less than $2,000, the Circuit Court had no jurisdiction.

The effect on future taxation of a decision that the particular taxation is invalid, cannot be availed of to add to the sum or value of the matter in dispute. *Holt* v. *Indiana Mfg. Co.,* 176 U. S. 68; *Clay Center* v. *Farmers' L. & T. Co.,* 145 U. S. 224; *New England Mortgage Co.* v. *Gay,* 145 U. S. 123; *Citizens' Bank* v. *Cannon,* 164 U. S. 319; *Rude* v. *Westcott,* 130 U. S. 152; *Walter* v. *Northeastern Railroad,* 147 U. S. 370.

The prayer for a perpetual injunction against future taxation is superfluous, and is evidently made in aid of

the jurisdictional amount.    *Brown* v. *Trousdale*, 138 U. S. 389; *Smith* v. *Adams*, 130 U. S. 167.

The allegation that the amount in controversy is more than $2,000 is a mere conclusion; and has no weight as against the specific allegations of the bill, failing to show such amount.    *Fishback* v. *West. Un. Tel. Co.*, 161 U. S. 26.

The right claimed by appellee of perpetual exemption from taxation of property now owned by it, and of property which it may hereafter acquire, is purely conjectural. It may or may not own a dollar's worth of property at any given time.    *Kurtz* v. *Moffitt*, 115 U. S. 487.

The sum or value of the amount in controversy may not be made up by a computation of the abstract rights of appellee to exemption from taxation upon whatever property, if any, it may at any time in the future own. *Washington & G. R. Co.* v. *Dist. of Col.*, 146 U. S. 227.

The Washington Territorial Exemption Act was not intended to bind the State thereafter to be formed.

The taxing power of the State is never presumed to be relinquished, and it exists unless the intention to relinquish it is declared in clear and unambiguous terms, admitting of no other reasonable construction.    *Southwestern R. Co.* v. *Wright*, 116 U. S. 231.

Territorial governments cannot be presumed, where a State would be, to have intended to bind, by a territorial legislative act, States thereafter to be formed from them, in such sweeping and vital matters as to perpetually exempt from taxation all property which a private corporation may at any time acquire, within its borders.

Regardless of the intent of the territorial legislature, the exemption act was void, and did not constitute a contract for perpetual exemption from taxation.

The territorial legislature was directly prohibited from granting such exemption by the organic act, § 1924, Rev. Stat.

Singling out this especial college and enacting a law

that its property should be exempt from taxation, showed a partiality and discrimination violative of the rule of both equality and uniformity required by § 1924, Rev. Stat. U. S. *Edge* v. *Robertson*, 112 U. S. 580; *Pollock* v. *Farmers' L. & T. Co.*, 157 U. S. 593; and 158 U. S. 601; Cooley on Taxation (1903 ed.), p. 381.

The requirement of uniformity in taxation refers to property or persons of the same class. It requires the rate to be uniform on the same class everywhere, with all people and at all times. *State* v. *Whittlesey*, 17 Washington, 447; Miller, Const. of United States, 241.

The territorial grant of exemption was an "especial privilege," within the meaning of the amendment to the organic act of March 2, 1867, § 1889, Rev. Stat. *New Jersey* v. *Wright*, 117 U. S. 648; *Morgan* v. *Louisiana*, 93 U. S. 217; *Wilson* v. *Gaines*, 103 U. S. 417; *Chesapeake & Ohio R. Co.* v. *Miller*, 114 U. S. 176; *Memphis & Little Rock R. Co.* v. *Berry*, 112 U. S. 609. The cases of *Phœnix Ins. Co.* v. *Tennessee*, 161 U. S. 174; *Pickard* v. *Tennessee & R. Co.*, 130 U. S. 642, simply decide that immunity from taxation is a personal, or an especial privilege, not extending beyond the immediate grantee, unless otherwise so declared in express terms.

A territorial law passed in violation of the positive prohibition of Congress is void. *Clayton* v. *Utah*, 132 U. S. 632; *Snow* v. *United States*, 18 Wall. 317.

While the assent of Congress may be implied, from lapse of time, and without specific sanction, to certain laws of a territory, laws enacted by the legislative assembly of Washington Territory require to be submitted to Congress, and if disapproved, they are void; § 1850, Rev. Stat.; *Clinton* v. *Englebrecht*, 12 Wall. 446; *Miners' Bank* v. *State of Iowa*, 12 How. 7; *Baca* v. *Perez*, 42 Pac. Rep. 162; this relates to matters of general territorial procedure, and not to matters contained within a private act as this one was.

· The territorial legislature recognized the Congressional requirement that taxes must be uniform and equal, and · that exemptions from taxation, except in cases specified, were prohibited; see § 2829, Code of Washington Territory, 1881.

The territorial act did not constitute a contract of perpetual exemption from taxation—it was a gift without consideration.

In procuring and accepting the amended charter, the Board of Trustees of Whitman College gave no additional pledge, and promised nothing which it had not already promised and was bound in honor to perform under its acceptance of the original charter. There was no consideration to support a contract for exemption from taxation. *Grand Lodge* v. *New Orleans*, 166 U. S. 143.

If appellee is entitled to relief in any event, the decree of the court is too broad.

. *Mr. W. T. Dovell*, with whom *Mr. George Turner* and *Mr. Thomas Burke* were on the brief, for appellee:

The jurisdictional amount is involved. Although the tax for one year is less than $2,000, clearly the right to a perpetual exemption of all of appellee's property exceeds that in value. *Betterman* v. *Louisville & Nashville R. R. Co.*, 207 U. S. 225; *Mississippi & Missouri R. Co.* v. *Ward*, 2 Black, 485; *Hunt* v. *N. Y. Cotton Exchange*, 205 U. S. 322; *Lanning* v. *Osborne*, 79 Fed. Rep. 657.

When the object or purpose of the bill is the assertion of a right which is alleged to be disputed by the respondent, and it may be fairly gathered from the bill that the asserted right is of a value in excess of two thousand dollars, jurisdiction is thereby conferred. *Brown* v. *Trousdale*, 138 U. S. 389; *Nashville, C. & St. L. Ry. Co.* v. *McConnell*, 82 Fed. Rep. 65; *Scott* v. *Donald*, 165 U. S. 107; *Texas & Pac. Ry. Co.* v. *Kuteman*, 54 Fed. Rep. 547; *Stinson* v. *Dousman*, 20 How. 461; *Evenson* v. *Spaulding*,

150 Fed. Rep. 517; *Delaware Ry. Co.* v. *Frank*, 110 Fed. Rep. 689; *Smith* v. *Adams*, 130 U. S. 167; *Albright* v. *Sandoval*, 200 U. S. 9; *American Fertilizing Co.* v. *Board of Agriculture*, 43 Fed. Rep. 609; *Simon* v. *House*, 46 Fed. Rep. 317; *Humes* v. *City of Fort Smith*, 93 Fed. Rep. 857; *Southern Express Co.* v. *Mayor &c. of Ensley*, 116 Fed. Rep. 756; *City of Hutchinson* v. *Beckhan*, 118 Fed. Rep. 399; *Pennsylvania Co.* v. *Bay*, 138 Fed. Rep. 203.

*Citizens' Bank* v. *Cannon*, 164 U. S. 319, was not a suit to exempt property from taxation permanently.

Assuming the jurisdictional amount to be sufficient, the Circuit Court had power to hear the cause under the authority of numerous cases: *Given* v. *Wright*, 117 U. S. 648; *Walla Walla City* v. *Walla Walla Water Co.*, 172 U. S. 1; *City Ry. Co.* v. *Citizens' R. Co.*, 166 U. S. 557; *Vicksburg Water Works Co.* v. *Vicksburg*, 185 U. S. 65; *Wilmington & Weldon R. Co.* v. *Alsbrook*, 146 U. S. 279; *Ill. Cent. R. Co.* v. *Adams*, 180 U. S. 28; *Starin* v. *New York*, 115 U. S. 248.

The rule that an asserted exemption from taxation will not be upheld, if by any reasonable interpretation it may be avoided, has no application here. *Citizens' Bank* v. *Parker*, 192 U. S. 85; *Clinton* v. *Englebrecht*, 13 Wall. 441; *Swan* v. *Williams*, 2 Michigan, 431; *Walker* v. *S. P. Ry. Co.*, 165 U. S. 593.

The court will not strike down an act of the territorial legislature unless it be clearly repugnant to the paramount law, and if, by any reasonable interpretation of the act, it may be made to consist with the superior law. it shall stand.

Congress granted to the people of the Territory of Washington the right of self-government. In so doing it placed upon them the duty of providing for the education of their youth, and failed to make a specific charge as to how that duty should be performed. It is fair to assume

that the plan adopted will not be demolished unless it be found unquestionably to defy some provision of the paramount law.

The term "especial privileges" as used in the act of Congress does not refer to a grant of this character. *Chesapeake & Ohio Railway Co.* v. *Miller*, 114 U. S. 176; *Phœnix Ins. Co.* v. *Tennessee*, 161 U. S. 174; *Plattsmouth* v. *Nebraska Telephone Co.*, 114 N. W. Rep. 588.

The right to occupy—often to monopolize—ferry sites, bridge sites or highways had been granted, and there was no uniformity in the powers, franchises and privileges thus granted to different incorporations.

It was to prevent this and to establish uniformity in the powers and privileges of corporations that the act of 1867 was passed. It was meant to deprive the legislature of the power to grant private charters and to require them to pass general laws for this purpose. *Jones* v. *Habersham*, 107 U. S. 174.

No grant made by the State for an adequate consideration may be called an "especial privilege," and an institution of the character of appellee certainly renders to the State a consideration to support its charter. *Dartmouth College* v. *Woodward*, 4 Wheat. 519; *Home of Friendless* v. *Rouse*, 8 Wall. 430, 437; *State* v. *Hamline University* (Minn.), 48 N. W. Rep. 1119; *Yale University* v. *New Haven* (Conn.) 42 Atl. Rep. 87; *Illinois* v. *Ill. Cent. R. Co.*, 33 Fed. Rep. 730, 769; *Firemen's Fund* v. *Roome*, 93 N. Y. 313.

The maintenance of institutions of learning has ever been considered a public function, and any corporation or association which helps to perform this function renders a public service.

The act of the territorial legislature granting the exemption, not having been disapproved, is valid.

There was conferred upon territorial legislatures the power to legislate upon all rightful subjects of legislation

not inconsistent with the Constitution and laws of the United States. § 1851, Rev. Stat.; 12 A. & E. Enc. of Law (2d ed.), 272; *St. Paul & Pacific R. Co.* v. *Frank M. Parcher &c.,* 14 Minnesota, 224, 250; *Clinton* v. *Englebrecht,* 13 Wall. 446; Cooley's Const. Lim. (7th ed.), p. 54, note; *Miners' Bank* v. *State of Iowa,* 12 How. 1; *Atlantic & Pac. R. Co.* v. *Lesueur* (Ariz.), 19 Pac. Rep. 157; *Sperling* v. *Calfee* (Mont.), 19 Pac. Rep. 204; *Baca* v. *Perez,* 42 Pac. Rep. 162; *Williams* v. *Bank of Mich.,* 7 Wend. 540; *Clayton* v. *Utah,* 132 U. S. 632.

Even under the failure of Congress to disapprove, the act of the legislature is the strongest possible evidence of approval by that body.

The act of the legislative assembly of 1883 was an amendment of the preëxisting charter and did not constitute a new charter. *Wallace* v. *Loomis,* 97 U. S. 146; *Louisville Gas Co.* v. *Citizens' Gas Co.,* 115 U. S. 683; *Attorney General* v. *Joy* (Mich.), 20 N. W. Rep. 806; *S. P. R. Co.* v. *Orton,* 6 Sawyer, 157, 185; *Wells* v. *O. R. & N. Co.,* 15 Fed. Rep. 561.

The prohibition contained in the act of Congress did not deprive the legislature of the power to alter the preexisting charter by special law. Morawetz on Priv. Corp. (2d ed.), § 12; *Attorney General* v. *Railroad Companies,* 35 Wisconsin, 425.

The grant of perpetual exemption is based upon a consideration so that it constitutes a contract. *Grand Lodge* v. *New Orleans,* 166 U. S. 143.

By the amendatory act the scope of the institution was increased from that of a seminary to a college. This enlarged scope, on account of which large contributions are alleged to have been received and the additional obligation undertaken by the amended charter, furnished the consideration for the exemption. *City Railway Co.* v. *Citizens' R. Co.,* 166 U. S. 557.

The consideration for a grant of an exemption from

taxation to an institution of this character is always to be presumed. *Illinois Central R. R.* v. *Decatur*, 147 U. S. 201.

The exemption in the charter is not in contravention of the organic act. *Columbia &c. R. R. Co.* v. *Chilberg*, 6 Washington, 612.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

On December 20, 1859, the legislature of Washington enacted a private law creating Whitman Seminary in Walla Walla County. By the act eight persons were incorporated under the name of the "President and Trustees of Whitman Seminary." The corporation was given perpetual existence and the incorporators authority to govern its affairs and to name their successors. The right to acquire and hold real estate was conferred, with the duty of devoting all the revenue to the support of an institution of learning, for the education of both sexes, which it was the purpose of the act to have established. The capital stock of the corporation was limited by the sixth section to $150,000. The act was accepted by the incorporators and the institution for which it provided, the Whitman Seminary, was established in Walla Walla County. After a lapse of twenty-three years, the Seminary, in November, 1883, owned considerable personal and real property, devoted to the purposes of the corporation. In that year and month a special act was passed by the territorial legislature, entitled "An act to amend . . . ." the act previously referred to (November 28, 1883, Laws of 1883, p. 399). By this act, in the form of an amendment the original incorporators were incorporated under the name of "The Board of Trustees of Whitman College." The act, section by section, amended the prior act. It gave the trustees power to perpetuate themselves and govern

the new corporation, which was endowed with perpetual existence. The act, in many respects, enlarged the powers of the old corporation, struck out the sixth section, which contained the limitation of $150,000 of capital stock, and substituted for it the following: "That the property of said board of trustees of Whitman College, including all income and proceeds shall be used exclusively for the purposes of education, and in consideration of said use, said property, income and proceeds shall not be subject to taxation." The organic law of the Territory, the act of Congress of March 2, 1867, § 1, 14 Stat. 426, c. 150, when this last act was passed, contained the following, now embodied in Rev. Stat., § 1889:

"That the legislative assemblies of the several Territories of the United States shall not, after the passage of this act, grant private charters or especial privileges, but they may, by general incorporation acts, permit persons to associate themselves together as bodies corporate for mining, manufacturing, and other industrial pursuits, or the construction or operation of railroads, wagon-roads, irrigating-ditches, and the colonization and improvement of lands in connection therewith, or for colleges, seminaries, churches, libraries, or any benevolent, charitable or scientific association."

Whitman College took over the property and effects of the Seminary. It increased its holdings of real and personal property, the avails of which were all devoted to the purposes of the institution. It was in existence when the territorial government passed out of being and the State of Washington was incorporated into the Union, and it is conceded by both sides in argument that no question which requires to be decided on this record calls for a consideration of any of the events or legislation which were a part of the transition from the territorial form of government to statehood. Up to 1905 it is inferable that no attempt was made to tax the property of Whitman College.

In 1905, however, the assessing officers of the county of Walla Walla, who are the appellants upon this record, acting under the authority of the state taxing law, and, upon the assumption that the property of the corporation was taxable, assessed its real property in the county of Walla Walla not actually and physically used for the purposes of the institution, and taxes were levied on such assessment amounting to $946.32. The corporation thereupon filed in the Circuit Court of the United States the bill which is now before us. The bill contained no averment of diversity of citizenship, and exclusively invoked the authority of the court below upon the ground of the existence of a perpetual contract right of exemption from taxation created by the sixth section of the act of 1883, and the impairment of such contract by the assessment and levy of the taxes in question.

The bill, as amended by stipulation, averred the existence of the contract, the compliance by the corporation with all its obligations, the acquisition of large amounts of property through contributions and otherwise dedicated to the purposes of the corporation, the detriment and loss which would be occasioned as the result of levying taxes upon the property of the corporation by the county of Walla Walla or otherwise by state authority; the destruction of the right of perpetual exemption not only as to the present but as to all future acquired property of the corporation which would result, and a consequent loss or damage vastly in excess of two thousand dollars. In substance, the prayer was for a decree recognizing and enforcing the contract of perpetual exemption from taxation as to all the property of the corporation, present or prospective, and for an injunction adequate to secure these results.

The defendants by demurrers challenged the jurisdiction of the court and the equity of the bill. After hearing, the court held that it had jurisdiction, that the contract

declared on had been established and was protected from impairment by the contract clause of the Constitution and therefore the assessment and levy of the taxes complained of were void. As defendants elected not to further plead, a final decree was entered granting the relief prayed in the bill. The appeal now before us was then taken.

The taxing officers of the county of Walla Walla, the defendants below and appellants here, insist that we may not review the merits, because the court below had no jurisdiction over the cause, and therefore we must reverse and remand, with directions to dismiss the bill. This rests upon the proposition that as the tax was below the jurisdictional amount, it afforded no basis for jurisdiction. The sum of the levied tax, it is urged, could not be increased by considering the power of taxation which might be exerted in other taxing districts, or by adding taxes which, if the right to tax existed, might be assessed and levied in future years. This, it is insisted, is not only sustained by reason, but is sanctioned by prior decisions of this court.

Both assumptions are wrong. The first, because it misconceives the character of the relief prayed, which was the enforcement of a contract exemption during the perpetual life of the corporation and as broad as its power to acquire and hold property.

Considering the averments of the bill, the amount and value of the property of the corporation, and the nature and character of the contract of exemption asserted, it cannot be doubted that the value of the thing in issue, the contract right, exceeded in value the jurisdictional amount. Granting that the uncertainties of the future and the shifting ownership of property forbids, in a contest merely over the validity of a tax, adding the sum of future taxes which might be levied to the amount of taxes actually levied for the purpose of jurisdiction, that principle can have no application to a case where the issue

presented is not only the right to collect, but also to levy all future taxes. The admission that the right to tax may be abridged by contract, and that such contract may not be impaired without violating the Constitution, carries with it of necessity the power and the duty to protect the contract right and in the nature of things causes jurisdiction for such purpose to be measured by the value of the right to be protected, and not by the value of some mere isolated element of that right. And the doctrine just cited has been applied in two cases so obviously in principle like this as practically to foreclose the question. The first is *New Orleans* v. *Citizens' Bank,* 167 U. S. 371. In that case a corporation of the State of Louisiana filed its bill in the Circuit Court to enjoin the collection of all taxes of a particular character against it, on the ground of a contract of exemption protected from impairment by the contract clause of the Constitution. As a means of establishing the existence of the contract exemption relied upon, certain judgments recognizing the existence of the contract exemption and enjoining particular taxes were pleaded as conclusively, by the principle of the thing adjudged, establishing the existence of the alleged contract. It was contended, among other things, that as the controversies in the cases in which judgments had been rendered concerned taxes for only particular years, the thing adjudged arising from the judgments was necessarily restricted to the taxes of the years in controversy and did not extend to future taxes, as they were not and could not have been embraced in the litigation. Deciding that this contention was unsound and deducing the existence of the contract as the result of the proof arising from the thing adjudged, it was pointed out that to deny in a case of contract exempting from taxation the right to a decree co-extensive with the power to tax which the contract restrained would be in and of itself an impairment of the contract, since if judicial power was not adequate to

control by the thing adjudged the right to a contract exemption and to prevent violations of such right, the power to contract would be of no avail. The second case, *Deposit Bank* v. *Frankfort*, 191 U. S. 499, came here on error to the Court of Appeals of the State of Kentucky. In the state court a judgment of a Circuit Court of the United States, recognizing the existence of contract exemption from taxation was pleaded as a bar against the enforcement of taxes which were embraced within the contract of exemption. The state court refused to give effect to the pleaded judgment of the Circuit Court of the United States on the ground that as by the settled rule in Kentucky judgments restraining the collection of taxes were limited to the particular taxes referred to and did not extend to taxes for future years, the judgment of the Circuit Court should be so limited, and therefore that judgment was not *res judicata*. In reversing the action of the state court on this subject, this court said (p. 512):

"The vice of this argument consists in assuming that the taxes for specific years were alone involved and covered by the decree of the court. The controversy was as to the force and effect of the Hewitt law as a contract; not for one year but for all years; not for one assessment, but for all assessments of taxes upon certain property of the bank. The contest was over the contract, and the consequent want of power to collect any and all taxes the assessment of which did violence to the contract rights of the bank. The court had jurisdiction of the parties and of the subject-matter of the suit, and it was adjudicated that there was a contract which was entitled to protection against impairment by state legislation within the right guaranteed by the Federal Constitution. This adjudication necessarily included not only the taxes for specific years, but foreclosed the right to collect any taxes concerning which the contract afforded immunity to the bank."

Measuring the contention as to the absence of the jurisdictional sum by the principles thus established, it answers itself, since the argument is equivalent to saying that a subject which is necessarily included in the relief to be granted and is, in the nature of things, concluded by the decree to be rendered is yet excluded from consideration for the purpose of the issues in the cause—that is, may not be taken into account in ascertaining whether there is jurisdiction over the controversy.

We state in the margin the cases principally relied upon to support the contention as to the want of jurisdiction.[1] It would suffice to say of these cases that if they supported the proposition which they are cited to maintain, they have been qualified and restricted by the cases which we have just reviewed. But such result is uncalled for, as an analysis of the cases will show that all of them considered, in the absence of contract, where the right to levy a particular tax was assailed, whether there was authority to make up the jurisdictional amount required, by calling into the consideration the influence which the judgment might have upon different taxes or the power to take in view future illegal taxes upon the theory that they might be levied.

We come to the merits, that is, to determine whether the special act incorporating Whitman College was a private charter within the prohibition of the organic act and therefore void, and, if not, whether the exemption from taxation which it conferred was an "especial privilege" within the prohibition of the organic act and hence beyond the power of the territorial legislature to grant. We thus at once bring face to face the act of 1883 and the

---

[1] *Holt* v. *Indiana Manufacturing Co.*, 176 U. S. 68; *Clay Center* v. *Farmers' L. & T. Co.*, 145 U. S. 224; *New England Mortgage Security Co.* v. *Gay*, 145 U. S. 123; *Citizens' Bank* v. *Cannon*, 164 U. S. 319; *Rude* v. *Westcott*, 130 U. S. 152; *Walter* v. *Northeastern Railroad Co.*, 147 U. S. 370.

prohibitions of the organic act dismissing all questions concerning the incorporation of the Territory of Washington into the Union as a State, because, as we have seen, it is conceded that nothing on that subject controls the question here to be decided.

We do not think it necessary to inquire whether the act of 1883, although it be assumed that it virtually called into being a new juridical person endowed with new powers and duties, may be treated, not as the original grant of a private charter, but as simply an amendment of the prior charter, because of the form in which the act of 1883 was couched. This is done, because as the issues for decision will be disposed of by considering the case in the light of the prohibition against "especial privileges," it will become unnecessary to consider the operation of the prohibition against the grant of private charters. We think it clear also that the disjunctive character of the prohibition found in the organic act excludes in reason the possibility of saying, as contended in argument, that the especial privileges provided against were simply intended to prohibit the conferring of such privileges as part and parcel of the granting of the prohibited private charters. To adopt such a view would cause the prohibition against especial privileges to be superfluous, and would be repugnant to the plain intent of the act, as manifested from its language. That intent, we think, was to take away the power to grant the forbidden especial privileges by any form of legislative action, leaving no room, therefore, for the implication that it was the purpose of the organic act to recognize the right to give especial privileges, provided only it was not made a part of the grant of a forbidden private charter. And this also completely serves to dispose of the contention that it was the intention of the prohibition against especial privileges to forbid merely the creation of such privileges as a legislative grant of an exclusive right to ferries, bridges, etc.,

which it is urged was a common form of territorial legislative abuse prior to the adoption, in 1867, of the organic act, and therefore was presumably the evil intended to be reached by the enactment of that act. We say this because, even if it be conceded that such alleged abuses were the generating cause of the insertion in the organic act of the prohibition against especial privileges, that concession affords no ground for the generic prohibition and for saying that it should be only applied to one class of especial privileges to the exclusion of all other such privileges. We must be controlled by the power which the act manifests, not by a consideration of the mere motive which initially energized the bringing of the power into play.

We at once moreover concede, for the sake of the argument, that the exemption from taxation which was conferred was upon a consideration, and therefore rested in contract, and if it was in the power of the territorial government to make, is protected from impairment by the contract clause of the Constitution. With this concession in mind, and before coming to determine whether the exemption was valid, that is, whether, in and by virtue of the prohibition in the organic law forbidding especial privileges, the territorial legislature was incompetent to grant a contract exemption, we briefly advert to the contention made that a broad meaning must be given to the organic act for the purpose, if it can be done, of establishing that there was no limit upon the power of the territorial legislature to exempt. It is conceded that the elementary rule is that exemptions from taxation must be strictly construed. But it is said that this applies only to the contract of alleged exemption, and has no relation to the inquiry whether the legislature had the power to exempt, because full legislative power must be presumed to exist unless there be a plain prohibition to the contrary. While we are of opinion that the contention has

no direct bearing on the more important proposition here
to be decided, we cannot give it, even by silence, our
assent, because we consider that it admits, on the one
hand, the rule of strict construction and at once denies it
upon the other, by improperly restricting the area of its
operation. We say this because if, in a particular case,
the duty arises of determining whether words of restric-
tion found in the fundamental law are intended to operate
a limitation on the legislative power to grant contract
exemptions from taxation, the rule of strict construction
is just as applicable as it would be to a case where it was
applied for the purpose of determining whether the par-
ticular terms of an alleged contract did or did not em-
brace an exemption from taxation. We think the rule of
construction is as broad as the subject to which it relates
and its operation does not depend upon whether the ques-
tion is one of limitation of legislative power or of the true
interpretation of a contract asserted to be one of exemp-
tion.

This brings us to the text of the organic act. That a
contract giving perpetual succession to a corporation and
endowing it with a perpetual exemption from taxation as
to all its property, real and personal, is an "especial
privilege," seems to us too clear for anything but state-
ment. We fail to see how any other conclusion can be
reached, in view of the fact that the very essence of such
a contract is to endow the corporation as to its property
forever with the privilege of being exempt from the opera-
tion and control of the essential governmental power of
taxation and thereafter to cause the corporation and all
its property, so far as that subject is concerned, to live
under the law of the contract and not under the law of
general taxation.

But it is said that while this may be the superficial
view, it is not an accurate and legal one, since the word
privilege has been construed by this court not to include a

contract of. exemption from taxation. The cases relied ·
upon are, *Chesapeake & Ohio Ry.* v. *Miller*, 114 U. S. 176,
and *Phœnix Insurance Co.* v. *Tennessee*, 161 U. S. 174.
Briefly, the subject passed upon in those cases and in
others of a similar character was this: Where a corpora-
tion enjoyed a right of exemption as to the whole or a
part of its property, did such exemption from taxation
pass under a foreclosure sale to the purchaser at such sale
when by law the rights and privileges of the corporation
were transferred by the sale? In other words, the question
was whether the transmission of the privileges of the
corporation to another embraced the privilege resulting
from a contract exemption from taxation. It was held
that it did not, upon the theory that a contract exemption
from taxation was so exceptional in its nature, that the
right to transmit it was not embraced in the general
authority to transmit privileges, and therefore the power
to transfer must be expressly and specially conferred.
These rulings were but an illustration in another form of
the duty to which we have previously referred under all
circumstances to bring to the consideration of the ques-
tion whether a contract exemption from taxation exists
the rule of strict construction. And of course, when the
principle upon which the cases were decided is rightly
understood their inappositeness to the case before us is
manifest. This must be, unless it can be said that rulings
which held that a contract of exemption was a privilege
of such character that it could not be transmitted without
express authority was a ruling that a contract exemption
was no privilege at all.

It is urged that as in this case there was a consideration
for the especial privilege granted, the agreement of the
incorporators to establish and maintain an institution of
learning, therefore the exemption cannot be held to be an
especial privilege within the intendment of the organic
act, since the privilege so bestowed was conferred not as

an especial privilege, but as an equivalent for the contract obligations assumed. As we have seen, however, it is the contract of exemption which, in the very nature of things, characterizes the grant as an especial privilege. When this is borne in mind it appears that the proposition is that the feature which gave to the grant the essential characteristic of an especial privilege must be held to cause it not to be of that nature.

The only principal contention remaining unnoticed is the alleged acquiescence of Congress in the grant of exemption resulting from its failure to disapprove the act of 1883. Rev. Stat., § 1850. The foundation, however, upon which that contention rests has been decided to be without merit. *Clayton* v. *Utah*, 132 U. S. 632, 642.

We have not reviewed the minor considerations which, in various forms of statement, have been pressed in argument concerning the wisdom displayed by the territorial assembly in enacting the act of 1883, and the far-reaching and public benefits which have resulted from the provisions of that act and the possible injury to the public weal to arise from now holding that the contract exemption from taxation which the act granted was beyond the scope of the legislative authority. It suffices to say that whatever may be the cogency of the suggestions thus made, it is obvious that they but invite us into a field of inquiry which lies beyond the line which separates the judicial from the legislative authority, and therefore we may not give heed to them.

*The decree of the Circuit Court is reversed and the cause is remanded to the District Court with directions for further proceedings in conformity to this opinion.*