**FAJARDO SUGAR CO. OF PORTO RICO v. HOLCOMB, Auditor.**

(Circuit Court of Appeals, First Circuit. November 23, 1926.)

No. 1938.

1. **Courts ⚖=328(3)—Suit to enjoin review by auditor of Porto Rico of plaintiff's income tax held to involve jurisdictional amount of $3,000.**

Jurisdictional amount of $3,000 *held* involved in suit to enjoin as unauthorized review by auditor of Porto Rico of plaintiff's income tax, as determined by board of equalization and review, not only because of expense to plaintiff of reaudit of its accounts, but because of amount involved in right to have its taxes determined by duly authorized tax officials.

2. **Taxation ⚖=608(9)—Officer having no power to revise tax assessments may be enjoined from revising them, as against claim of remedy at law.**

As against claim of plain, adequate, and complete remedy at law, plaintiff is entitled to injunction against revision of its tax assessments by public officer having no power to revise them.

3. **Taxation ⚖=466—Auditor of Porto Rico cannot revise tax assessments; "auditor," "settle" (Organic Act of Porto Rico, §§ 20, 37 [Comp. St. §§ 3803gg, 3803oo]).**

Auditor of Porto Rico has no power to revise tax assessments, "auditor" not ordinarily connoting such power; it not being included in power given him by Organic Act of Porto Rico, § 20 (Comp. St. § 3803gg), to "examine, audit and settle all accounts pertaining to the revenues and receipts," this not being the natural meaning of "settle," and under tax acts of Porto Rico, authorized by Organic Act, § 37 (Comp. St. § 3803oo), and War Revenue Act 1917, § 5 (Comp. St. § 6336vv), and Federal Revenue Act 1918, § 261 (Comp. St. § 6336½z), exclusive tax-assessing powers being vested in the treasurer and the board of review and equalization.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Auditor; Settle—Settlement.]

4. **Territories ⚖=23—Auditor of Porto Rico could have investigation of competency and efficiency of tax-administering officials (Organic Act of Porto Rico, § 20 [Comp. St. § 3803gg]).**

Under Organic Act of Porto Rico, § 20 (Comp. St. § 3803gg), Auditor, required to

make annual report of fiscal concerns of government, and authorized in execution of his duties to summon witnesses and take evidence, might investigate as to competency and efficiency of tax-administering officials.

**Appeal from the District Court of the United States for the District of Porto Rico: Ira K. Wells, Judge.**

Suit by the Fajardo Sugar Company of Porto Rico against Frederick W. Holcomb, Auditor of Porto Rico, substituted for W. L. Kessinger, Auditor. From adverse decree, plaintiff appeals. Reversed and remanded.

David A. Buckley, Jr., of New York City (O. B. Frazer, of San Juan, Porto Rico, on the brief), for appellant.

William C. Rigby, Lieutenant Colonel, Judge Advocate, of Washington, D. C. (George C. Butte, Atty. Gen., of Porto Rico, and Russell H. Brennan, of Washington, D. C., on the brief), for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. In the court below, after hearing, the bill was dismissed on the narrow ground of lack of the jurisdictional amount of $3,000.

On the merits, the gist of the case is whether the auditor of Porto Rico has, under section 20 of the Organic Act, 39 Stat. 951 (Comp. St. § 3803gg), power to revise and to reassess taxes already assessed (and in part paid), under the statutes enacted by the Porto Rican Legislature.

The plaintiff is a Porto Rican corporation carrying on a large sugar business. Pursuant to the Porto Rican statutes, No. 80 of 1919, as amended by No. 18 of 1920, and No. 43 of 1921, the sugar company filed with the treasurer of Porto Rico its income tax return for the year ending July 31, 1920. On this return, a tax of $540,337.44 was in due course assessed by the treasurer and paid by the sugar company. Subsequently the treasurer, after inspection and audit of the sugar company's books, levied and assessed an additional tax of $398,524.72. From this assessment, an appeal was duly taken to the board of equalization and review, which reduced the additional tax to $180,977.84. The appellant contends that under the tax statutes, supra, the decisions of the board of equalization and review are final; that at any rate the auditor has no power to revise such decisions.

In May, 1925, the auditor sent employees of his office to the office of the sugar company and demanded the right to examine the books and documents of the company for the years 1919 and 1920 in order to ascertain the correctness of the decisions of the board of equalization and review; and in June, 1925, the auditor caused to be served upon the sugar company's manager a summons duces tecum to produce in the auditor's office on June 26 the ledgers of the sugar company for 1919 and 1920, to be used in whole or in part as evidence in the matter of the company's income tax for 1920.

The purpose of the proceeding is accurately shown by the following letter of the auditor to the sugar company:

"June 19, 1925.

"The undersigned, auditor of Porto Rico, being satisfied that the income tax returns submitted by you for the year 1920, and the final liquidation based thereon, made by the board of review and equalization, are unsound and incorrect, and the Governor of Porto Rico, being advised of this fact, the said Governor has requested the auditor of Porto Rico, and the auditor finds it necessary, to examine, audit, and settle the said accounts between you and the government of Porto Rico, and between the government of Porto Rico and the treasurer thereof.

"You are hereby notified that, in the execution of the said duty, the auditor will hold a hearing in his office in the city of San Juan, Porto Rico, on the 25th day of June beginning at 10 a. m.

"I respectfully ask your assistance and cooperation in order that the true facts may be ascertained, and you are invited to be present at said hearing, and submit any evidence, oral or written, that you may desire. You will understand, however, that this is not a lawsuit, but is an examination and audit, conducted by the auditor, in authority with section 20 of the Organic Act of 1917, and by direction of the Governor of Porto Rico.

"Given under my hand and seal of office, this 19th day of June, 1925.

"Respectfully,

"W. L. Kessinger,

"Auditor of Porto Rico."

The sugar company refused obedience to the summons, and on June 25, 1925, filed a bill in which it asks that the auditor and his employees be enjoined from "taking any evidence or making any investigation as to the amount of income taxes due or claimed from complainant for its fiscal year ended July 31, 1920, and from disregarding or attempting to evade the decision of the board of equalization and review fixing the amount of

said taxes, and from auditing and· settling or attempting to audit and settle the account of complainant with the people of Porto Rico for 1920 income taxes."

In his answer, the auditor contends that although, under the Porto Rican tax law above referred to, "the decisions of the board of review and equalization are by law final, said decisions cannot abridge or limit the authority of the auditor of Porto Rico, granted by the Organic Act of Porto Rico as to the investigation to be made in order to audit, examine or settle the accounts of the government in any of its departments," and that, as such auditor, "he is legally bound to examine, audit, and settle all accounts pertaining to the revenues and receipts of the ·government of Porto Rico from whatever source."

At the trial the auditor's position was stated by the Assistant Attorney General as follows:

"Our contention is twofold: One, that the auditor of Porto Rico has a right to audit the accounts of the treasurer; and, second, that the auditor of Porto Rico, as a consequence of that power that he has, has the right to revise any decision of the treasurer of Porto Rico."

This amounts to asserting that the auditor is a part—almost a dominant part—of the tax levying and collecting power.

[1] While at the trial there was some controversy over the amount involved in the mere production of the books under the summons duces tecum, we are unable to adopt the view of the court below that the amount involved in the case could, either on the pleadings or on the evidence, be found to be less than $3,000. It is true that the company's general manager testified to the obvious fact that, if the auditor proceeded no farther than to require the company to produce in his office its ledgers for his examination, the expense to the company would be less than $3,000. But the fair construction of his testimony, as a whole, is consistent with the facts (manifest from the general situation), viz. that, if the company had to submit to a general investigation of its tax return and to a reaudit of its accounts, its expense therefor would far exceed $3,000, even if the auditor should, after such examination, make no attempt to change the tax already determined by the board of equalization and review.

But, apart from the amount of expense involved in the reaudit, the case falls under the doctrine illustrated in such cases as American R. R. Co. v. South Porto Rico Sugar Co. (C. C. A.) 293 F. 670; Berryman v. Whitman College, 222 U. S. 334, 32 S. Ct. 147, 56 L. Ed. 225; Bitterman v. Louisville, etc., R. R., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Packard v. Banton, 264 U. S. 140, 44 S. Ct. 257, 68 L. Ed. 596. The right to have its taxes determined by the duly authorized tax officials involved much more than $3,000.

It was error to dismiss the bill on the ground that the jurisdictional amount was not shown.

[2] 2. Nor is there anything in the suggestion, rather faintly made, that the sugar company has a plain, adequate, and complete remedy at law. If right in its contention as to the auditor's lack of power to revise tax assessments, the sugar company is entitled to relief in equity. Greene v. Louisville, etc., R. R., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, 14 Ann. Cas. 764; Camunas v. N. Y. & P. R. S. S. Co., 260 F. 41, 48, 49, 171 C. C. A. 76.

[3] 3. The gist of the auditor's contention is that, under the Organic Act, he has the power and the duty to review and revise the decisions of the taxing officials; to make, if he finds ground therefor, new assessments and demand their payment. This is an important contention calling for careful consideration.

At the outset, we observe that the term "auditor" does not ordinarily connote power to assess taxes or to revise tax assessments. In general, an auditor is "an officer of the government, whose duty it is to examine the acts of officers who have received and disbursed public moneys by lawful authority." 1 Bouv. Law Dict. 289. Compare 6 C. J. p. 860. If, under the Organic Act, the auditor of Porto Rico has, in whole or in part, control over the taxing power, we should expect to find that unusual delegation explicitly stated. We do not find it. Sections 20 and 21 (Comp. St. §§ 3803gg, 3803h) are as follows:

"Sec. 20. That there shall be appointed by the President an auditor, at an annual salary of $5,000, for a term of four years and until his successor is appointed and qualified, who shall examine, audit, and settle all accounts pertaining to the revenues and receipts, from whatever source, of the government of Porto Rico·and of the municipal governments of Porto Rico, including public trust funds and funds derived from bond issues, and audit, in accordance with law and administrative regulations, all expenditures

of funds or property pertaining to or held in trust by the government of Porto Rico or the municipalities or dependencies thereof. He shall perform a like duty with respect to all government branches.

"He shall keep the general accounts of the government and preserve the vouchers pertaining thereto.

"It shall be the duty of the auditor to bring to the attention of the proper administrative officer expenditures of funds or property which, in his opinion, are irregular, unnecessary, excessive, or extravagant.

"In case of vacancy or of the absence from duty, from any cause, of the auditor, the Governor of Porto Rico may designate an assistant, who shall have charge of the office.

"The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. With the approval of the governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with law covering the methods of accounting for public funds and property, and funds and property held in trust by the government or any of its branches: Provided, that any officer accountable for public funds or property may require such additional reports or returns from his subordinates or others as he may deem necessary for his own information and protection.

"The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed. The auditor shall, except as hereinafter provided, have like authority as that conferred by the law upon the several auditors of the United States and the Comptroller of the United States Treasury, and is authorized to communicate directly with any person having claims before him for settlement, or with any department, officer, or person having official relations with his office.

"As soon after the close of each fiscal year as the accounts of said year may be examined and adjusted, the auditors shall submit to the governor an annual report of the fiscal concerns of the government, showing the receipts and disbursements of the various departments and bureaus of the government and of the various municipalities, and make such other reports as may be required of him by the governor or the head of the executive department of the government of the United States, to be designated by the President as herein provided.

"In the execution of his duties the auditor is authorized to summon witnesses, administer oaths, and to take evidence, and, in the pursuance of these provisions, may issue subpœnas and enforce the attendance of witnesses.

"The office of the auditor shall be under the general supervision of the Governor and shall consist of the auditor and such necessary assistants as may be prescribed by law.

"Sec. 21. That any person aggrieved by the action or decision of the auditor in the settlement of his account or claim may, within one year, take an appeal in writing to the Governor, which appeal shall specifically set forth the particular action of the auditor to which exception is taken with the reason and authorities relied on for reversing such decision. The decision of the governor in such case shall be final, subject to such right of action as may be otherwise provided by law."

We are unable to adopt the contention of the Attorney General of Porto Rico, that the auditor's power under this section 20 to "examine, audit and *settle* all accounts pertaining to the revenues and receipts" means that decisions of the treasurer and other officials charged with the administration of the taxing power are subject to review and revision by the auditor. This is not the natural meaning of the word "settle," construed in the light of the context and of the usual duties of an auditor. Doubtless the *accounts* of the treasurer, with relation to the collection of taxes levied in accordance with law, are subject to the auditor's examination and approval or disapproval. But to "settle an account" is one thing; to determine the legal basis of the account is quite another thing. To settle accounts pertaining to receipts from taxes is not to levy the taxes from which the receipts are derived. To approve or to disapprove a disbursement is not to settle the legal basis of that disbursement. It is the auditor's duty to bring to the attention of the proper administrative officers expenditures "irregular" or even "extravagant"— thus becoming a critic of expenditures for which there is elsewhere an element of discretion. But he is not thus vested with the actual powers of other officials dealing with disbursements.

If, turning from the sections specifically dealing with the powers of the auditor, we look more broadly at the structure of the government of Porto Rico provided under the Organic Act,—we are driven to the same conclusion. Under that act, the Governor, Attorney General, commissioner of educa-

tion and auditor are presidential appointees. The Governor has, in general, the powers of the Governor of one of our states, and, besides, he is required annually to make official report of the transactions of the government of Porto Rico to the executive department of the United States, to be designated by the President, and the said annual report shall be transmitted to Congress. Moreover, in section 34 (Comp. St. § 3803n), it is provided that if, after veto of the Governor, the Legislature shall by a two-thirds vote pass an act over the veto, the Governor, if he shall not then approve, shall transmit the proposed act to·the President of the United States; that, "if the President of the United States approve the same he shall sign it and it shall become a law. If he shall not approve same, he shall return it to the Governor so stating, and it shall not become a law." It follows that no act can become law without the approval of the Porto Rican Governor, a presidential appointee, or of the President of the United States. There is also a provision in section 34 that:

"All laws enacted by the legislature of Porto Rico shall be reported to the Congress of the United States,  *  *  *  which hereby reserves the power and authority to annul the same."

If not thus annulled within reasonable time, there is a presumption that they are approved. Tiaco v. Forbes, 228 U. S. 549, 558, 33 S. Ct. 585, 57 L. Ed. 960;. Porto Rico v. American, etc., R. R., 254 F. 369, 165 C. C. A. 589; Camunas v. P. R. Ry. (C. C. A.) 272 F. 924, 931, and cases cited.

The result is that all Porto Rican legislation now on the statute books is—in a very real sense, though indirectly—the output of our federal government. Under such conditions, the court should not lightly assume that the tax acts of Porto Rico, now contended to be in conflict with section 20 of the Organic Act, are inconsistent and therefore invalid. Doubtless the relation of the Organic Act to the Porto Rican government is, in certain aspects, like the relation of a state Constitution to a state Legislature. Camunas v. P. R. Ry., etc., Co. (C. C. A.) 272 F. 924, 928.·

But the analogy is not complete; for, after all, the Organic Act is nothing but federal legislation, and Porto Rican legislation, approved expressly or impliedly by Congress, has exactly the same import.

Turning from powers withheld to powers granted, it is not, and cannot be, denied that Congress intended, subject to the conditions above referred to as to the powers of the Governor,· the President and Congress, to delegate to the Porto Rican Legislature very large powers, including the power to levy and collect taxes.

Section 37 provides: "That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable.  *  *  *" Comp. St. § 3803oo.

In the lengthy enumeration of general legislative powers, we find: "All bills for raising revenue shall originate in the House of Representatives, but the Senate may propose or concur with amendments, as in the case of other bills."

If there were otherwise any doubt as to the general control of taxation by the Porto Rican Legislature, the legislation by Congress in 1917 and 1918 would resolve that doubt.

Section 5, War Revenue Act of 1917, 40 Stat. 302, provides:

"That the provisions of this title shall not extend to Porto Rico or the Philippine Islands, and the Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands respectively." Comp. St. § 6336vv.

The last part of section 261 of the Federal Revenue Act of 1918, 40 Stat. 1088, is as follows:

"The Porto Rican or Philippine Legislature shall have power by due enactment to amend, alter, modify, or repeal the income tax laws in force in Porto Rico or the Philippine Islands, respectively." Comp. St. § 6336⅛z.

It is conceded by the auditor that under the tax· acts, supra, the treasurer and the board of review and equalization are vested with general and, for present purposes, inclusive and exclusive tax-assessing powers. The auditor is not even named. The treasurer is to assess and collect taxes on the basis of the income return of the taxpayer; he is to investigate such returns, and compute any additional tax which he finds due; if he assesses an additional tax, the taxpayer may appeal to the board of review and equalization, whose decision shall "be final," subject to the taxpayer's making payment under protest and resorting to the courts.

In the light of these explicit provisions, consistent with the general framework of the Porto Rican government, existing under Porto Rican statutes approved by the Governor

and impliedly approved by Congress, we cannot hold that the auditor is, as is now contended, part of the tax levying and administering machinery of Porto Rico.

[4] On the other hand, it should be made clear that the powers of the auditor and of the Governor (under whose general supervision the auditor acts) cover investigation of all matters in all departments of the government of Porto Rico, involving not merely the disbursement but the receipt of money. Under section 12 of the Organic Act (Comp. St. § 3803ddd), the governor is charged with the general supervision and control of all departments and bureaus of the government of Porto Rico so far as not inconsistent with the Organic Act. Under section 13 (section 3803e), heads of departments appointed by the Governor hold office for four years "unless sooner removed by the Governor." This shows that in the Governor is vested power of removal, applicable under section 13, to four of the six departments, including the finance department, headed by the treasurer. Under these analogous provisions of the Organic Act, it is the plain duty of the Governor to make and keep himself fully informed as to the integrity and efficiency of the administration of all the governmental departments, as well as the adequacy of the laws under which these departments function.

Clearly the power of removal of appointees cannot be fairly and intelligently exercised without critical knowledge concerning their performance of their duties. This aspect of the powers and duties of a chief executive are well illustrated in the recent opinion of Chief Justice Taft in Myers v. United States, 47 S. Ct. 21, 71 L. Ed. — (October 25, 1926), dealing with the President's power of removal:

"Of course there may be duties so peculiarly and specifically committed to the discretion of a particular officer as to raise a question whether the President may overrule or revise the officer's interpretation of his statutory duty in a particular instance. Then there may be duties of a quasi judicial character imposed on ex-executive officers and members of executive tribunals whose decisions after hearing affect interests of individuals, the discharge of which the President cannot in a particular case properly influence or control. But even in such a case he may consider the decision after its rendition as a reason for removing the officer, on the ground that the discretion regularly entrusted to that officer by statute has not been on the whole intelligently or wisely exercised. Otherwise he does not discharge his own constitutional duty of seeing that the laws be faithfully executed."

Moreover, under section 20, supra, the auditor must "submit to the Governor an annual report of the fiscal concerns of the government, showing receipts and disbursements of the various departments," etc., and shall also "make such other reports as may be required of him by the Governor," etc. The term "fiscal concerns" is broad enough to cover receipts, and besides "receipts" are expressly mentioned. To make these reports —annual and special—covering receipts as well as disbursements, the auditor may need to use the powers expressly given him to summon witnesses and to take evidence concerning the acts of officials in any department. Such a proceeding, at least if under the direction of the Governor, would be "in the execution of his duties." No taxpayer can successfully resist process to appear, with books and documents, and to give evidence for such purposes.

The difficulty we have found in this case is that the auditor's contentions go far beyond those of investigation, either upon his own initiative or under the instructions of the Governor. His contentions involve (to repeat for the sake of clarity) an assertion of power to revise and reassess taxes. That power we hold the auditor has not. But if the same investigation had been initiated for and limited to the avowed purpose of obtaining pertinent information relative to the scope and interpretation of the tax statutes, or as to the competency and efficiency of the tax-administering officials, we should have been unable to say that the auditor had acted ultra vires the Organic Act.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion; no costs to either party.